WILLIAM SUGG et al., Appellants, *v.* JOHN B. THRASHER et al., Appellees.

1. EQUITY: UNCONSCIENTIOUS DEFENCE.—A court of equity will not permit a party to avail himself of an unconscientious advantage, obtained by his own act, and without the fault of his adversary.

2. STATUTE OF LIMITATIONS: EFFECT OF INJUNCTION AS TO.—A debtor, at whose instance an injunction has been issued, and kept in force for seven years, restraining the collection of a judgment against him at law, will be enjoined by a court of equity from setting up the Statute of Limitations as a defence to the collection of the judgment.

3. INJUNCTION: VIOLATION OF.—It is a violation of an injunction restraining the collection of a judgment, to issue an execution thereon, and place it in the hands of the sheriff, although no sale takes place under it.

APPEAL from the Superior Court of Chancery.   Hon. Charles Scott, chancellor.

*John B. Coleman* and *George V. Moody*, for appellants.

The demurrer should have been sustained and the cross-bill dismissed, because it is apparent upon the face of the bill, and of the exhibits referred to, and made a part of it, that the bar of the statute has attached to the judgment, in consequence, *alone*, of the *laches* of the complainants.

The injunction, which is made a part of the cross-bill, neither restrains the complainants from issuing execution, suing out a *scire facias*, or bringing an action of debt on the judgment.   It enjoins a levy of execution on property of the estate, and all further proceedings in the premises.

Now, what is the meaning of "further proceedings in the premises?"   It means, of necessity, proceedings to coerce the *payment* of the judgment.   The collection of the money by execution, and the levy of the execution, are enjoined—nothing more. The language of the injunction is to be construed in connection with its object.   The specific command, restraining a levy of the execution, is the "premises," referred to.   The issuance of execu-

tion is not enjoined—only its levy; and, of course, a sale under it, as there can be no execution sale without a previous levy.

The complainants might, without any violation of the injunction, have issued execution on their judgment after every term of the court; they might have sued out as many *scire facias* as they pleased, and they might have brought an action of debt at any time during the pendency of the case in the chancery and higher courts.

But even had the injunction gone the full length of prohibiting the complainants from issuing execution, from suing out a *scire facias*, or from bringing an action of debt—had all these acts been specifically enjoined, and the complainants tied hand and foot, they had it in their power, at any moment, to obviate all difficulty, in two ways :—

1. By an application to the chancellor to modify the injunction, so as to allow them to take such steps as might be necessary to prevent the bar of the statute attaching to their judgment; which modification the chancellor would have been bound to allow.

2. By disregarding the injunction and taking the necessary steps to keep the judgment alive.   16 Wend. 572; *Robertson* v. *Alford*, 13 S. & M. 514.

Is it not manifest, then, that the bar of the statute has attached to the judgment, in consequence, alone, of the *laches* of complainants?   See, also, Bacon Ab. tit. Limitation, E.

But, suppose that there had been no *laches* on the part of the complainants, still they are not entitled to relief, because this court has decided, and it is now the settled law of the state, that the pendency of an injunction does not stop the running of the Statute of Limitations, or suspend its operation.   *Robertson* v. *Alford,* 13 S. & M. 512 ; *Ingraham* v. *Regan*, 1 Cushm. 224.

And in conformity with the principle upon which the foregoing decisions have been made, this court has still more recently decided, that courts of equity, as well as courts of law, are restricted from engrafting on the Statute of Limitations any equities, or any savings, not embodied in the statute itself.   *Kilpatrick* v. *Byrne*, 3 Cushm. 581; *Buster* v. *Craig et al.*, 5 Ib. 628.

An effort will be made to sustain this bill, on the ground that it

Sugg et al. *v.* Thrasher et al.

is one of the peculiar attributes of a court of equity, to interpose, by injunction, to prevent a party from making an unconscientious defence to an action at law.

Many English, and some American authorities, will be cited in support of this position, and cases will be read, similar, in many respects, to the one at bar, and where the unconscientious defence, which was enjoined, was, as in this case, the Statute of Limitations.

Without proceeding to a special examination or analysis of these cases, they can be disposed of *in solido.*

They are all based upon the hypothesis, that the defence of the Statute of Limitations is not a meritorious defence; that the statute is one which courts, and more especially courts of equity, should look upon with disfavor; and that, whenever an opportunity offers to take a case without the operation of the statute, by engrafting upon it an equitable saving, not embodied in it by the legislature, a court of equity should never let that opportunity pass.

This view of the statute is not taken by our courts. This court, in a series of adjudications, recognizes it as a wise and beneficent statute—as a statute of repose : as one, whose provisions and spirit it is the duty of the courts faithfully and liberally to carry out; and as one, upon which neither courts of equity nor courts of law have any right or power to engraft savings, equities, or exceptions not embodied in it by the legislature. *Smith* v. *Westmoreland,* 12 S. & M. 665; *Henderson* v. *Ilsley,* 11 Ib. 9; *Robertson* v. *Alford,* 13 Ib. 509; *Ingraham* v. *Regan,* 1 Cushm. 224; *Kilpatrick* v. *Byrne,* 3 Ib. 581; *Butler* v. *Craig,* Ib. 629.

Now admit, to the fullest extent, the power and the duty, if you please, of a court of equity to interpose, by injunction, to prevent a party from availing himself at law, of an unconscientious defence; we have shown that the defence of the Statute of Limitations, is not, *per se,* an unconscientious one; that a court of equity has no right to treat it as an unconscientious defence; and that, unless there are circumstances surrounding the case, *which circumstances* would render it inequitable and unconscientious for the defendant to interpose the defence, a court of equity has no power

to enjoin it. That we may not be misunderstood, our position is this: The defence of the Statute of Limitations, is both at law and in equity, to be treated as a valid, just, meritorious, and proper defence; it is to be put upon the same footing with all other defences which the law affords to a party litigant for his protection; and it is to be treated with the same favor with which the defences of payment, release, failure of consideration, usury, &c., &c., are treated.

The question then arises, are there any circumstances attending the case presented by the cross-bill, which render it unconscientious on the part of the defendants to plead the statute to the *scire facias?*

We think we have already demonstrated, that although the cross-bill alleges that the injunction prevented the complainants from keeping their judgment alive, it had no such effect. The injunction, as well as all the proceedings in the original case, are referred to, and made part of the cross-bill, and the injunction, as we have shown, only restrains the levy of execution and sale of property. The allegation, therefore, of the bill being contradicted by the exhibits referred to in support of it, is not confessed by the demurrer.

We have also, we think, shown, that even had the injunction prevented the complainants, or should this court decide that it really did prevent the complainants from taking the necessary steps to keep their judgment alive, still it would have been modified at any moment, upon application to the chancellor, and that the judgment has become barred, not by the act of the defendants, but by the culpable *laches* and remissness of the complainants.

Where then, we ask, are the peculiar circumstances, attending this case, which would render a plea of the Staute of Limitations to the *scire facias*, either inequitable or unconscientious?

*H. T. Ellett*, for appellees.

1. This is a plain case for relief in the court below, on the cross-bill. The complainants went into equity for an injunction—kept it in force until now, when if he can turn the party *back to law*, the Statute of Limitations will bar the debt.

Sugg et al. *v.* Thrasher et al.

The court being in possession of the cause for one purpose, will retain it for all purposes of substantial justice between the parties. But it is asked to dismiss the cross-bill, *expressly in order* that the Statute of Limitations, *may be allowed to run:* surely it will do no such iniquity.

2. If it is regarded in the light of an original bill for relief, it is sustainable on the ground that the remedy at law has been lost by the delay caused by the wrongful conduct of the opposite party.

Where a party applies to a court of equity, and carries on an unfounded litigation under circumstances, and for a length of time, that deprives his adversary of his legal right to proceed at law, on account of the Statute of Limitations having run in the intermediate time against it, courts of equity will supply and administer a substitute of the original legal right, &c.   2 Story, Eq. 679, § 1316, a; 906, § 1521; *Bond* v. *Hopkins*, 1 Scho. & Lef. 413, 431, 434; *Pulteny* v. *Warren*, 6 Vesey, jr. 73; *Hovendon* v. *Ld. Annesley*, 2 Scho. & Lef. 630; *M'Kenzie* v. *Powis*, 7 Brown, Par. Cas. 328; *East India Co.* v. *Campion*, 11 Bligh. 188.

Whenever a party is prevented by an order of court, from proceeding to establish his right at law, it is the duty of the court to take care that no injury shall arise to him, in consequence of such interference.   *O'Donnell* v. *Brown*, 1 Ball & Beat. 263; *Bond* v. *Hopkins*, 1 Scho. & Lef. 441.

At law, interest is not allowed beyond the penalty of a bond. *Wild* v. *Clarkson*, 6 Tenn. R. 303; and in general, the same rule prevails in equity.   *Clark* v. *Seton*, 6 Vesey, 414.   But where the creditor has been prevented from going on at law, or is kept out of his money, by the wrongful conduct of the debtor, a court of equity will give relief for interest beyond the penalty.   *Duval* v. *Terry*, Shower, P. C. 16; *Grant* v. *Grant*, 3 Sim. 340, (5 Eng. Ch. 144); *Hale* v. *Thomas*, 1 Vern. 349.   This case of *Hale* v. *Thomas*, was a case of delay caused *by injunction.*

3. The bill is sustainable, as an original bill, to enjoin the party from pleading the Statute of Limitations at law.   It is a very familiar exercise of equity jurisdiction, to restrain parties from availing themselves of a legal advantage or defence, unconscien-

tiously obtained, or insisted on.  2 Story, Eq. 218, § 903; *Champlin* v. *Dotson,* 13 S. & M. 553.

The Statute of Limitations will not be allowed to be pleaded at law, where it is against conscience.  *Bond* v. *Hopkins,* 1 Scho. & Lef. 413; *Hale* v. *Thomas,* 1 Vernon, 349; *Duval* v. *Terry,* 1 Shower, P. C. 16; *Bencke* v. *Thorneycraft,* 1 Brown, Ch. Cas. 289; *M'Kenzie* v. *Powis,* 4 Brown, P. C. 328; Ib. 92, (2nd ed. by Tomline); *Mitchell* v. *Cue,* 2 Burr, 660; 2 Atkins, 381, 388; 1 Vesey, 289; 2 Ib. 476; Cruise on Fines, 174, 366 a.; *Pulteney* v. *Warren,* 6 Vesey, 73.

The case of *Byrne* v. *Kilpatrick,* 3 Cushm. (25 Miss.) 571, does not affect the question.  The point whether the court will, in a proper case, enjoin a party from setting up the statute, was not presented, nor decided, nor were authorities cited in regard to it. All that case decides is, that an injunction does not stop the running of the statute, and that the court cannot by construction, engraft exceptions upon it, not provided by the legislature.

We do not dispute that, and perhaps our bill would not be sustained, in the view in which we are now considering it, if the law were not so.  For it is precisely because the injunction does not operate to stop the statute, that we come here, on grounds affecting the conscience of the party, to restrain him from using the advantage which the law gives him.

There is *no legal defence,* of whatever character, so absolute and sacred, that a court of chancery may not take it away from the party, upon the equitable principle we invoke.  The only question is, whether, under the circumstances of the case, it would be unjust and inequitable, to allow him the benefit of his legal advantage; and if so, the court will restrain him, whether the defence arises under an act of the legislature, or otherwise.

What answer is given to our demand for relief?

1. It is said, the injunction *issued,* did not restrain us from executions, suits, or writs of *scire facias.*

A fair construction of the *writ,* does restrain all proceedings. At any rate, the court would not encourage parties to speculate how far they might go in violation of injunctions.  But in this

case, the·*prayer* of the *bill*, and the *fiat* of the judge, cover everything.

Though the writ is not so full as the *fiat*, yet if a party has actual notice of an injunction, or of the order for it, by being in court where it is made, or from information, he may be punished for a breach of it. *Kempton* v. *Eve*, 2 Ves. & Bea. 350; *Vansanden* v. *Rofe*, 2 Jac. & Walk. 264; 14 Ves. 136; *M'Neill* v. *Garratt*, 5 Lond. Jur. 836; 1 Smith's Ch. Pr. 425, note a.; *Skip* v. *Warwood*, 3 Atkins, 564; *Anon.* Ib. 567; *Hearn* v. *Tennant*, 14 Ves. jr. 136.

2. That we have been guilty of *laches*—we ought to have asked for a modification of the injunction.

The facts are:—the fiat is dated November 7th, 1845—the bill filed November 24th, and, at *December term*, 1845, a motion to dissolve was submitted, and held under advisement until *June*, 1848, when it was sustained, and an appeal instantly taken. During the latter part of the term of the statute, the case was in this court; the chancellor could not *modify* what he had *already destroyed*, and this court could only affirm or reverse his decision.

3. We might have disregarded the injunction, and suffered fine and imprisonment for so doing.

Will this court encourage parties to the disobedience of lawful process, or will it save him from wrong, by reason of his obedience to it? Which is the best principle for the court to establish?

FISHER, J., delivered the opinion of the court.

This is an appeal from a decree of the Superior Court of Chancery, overruling the appellants' demurrer to the appellees' crossbill.

The complainants, as administrators of the estate of Duncan H. McIntyre, deceased, filed their bill in the Superior Court of Chancery, for the purpose of enjoining the appellees from further proceedings to enforce a judgment recovered against the complainants as such administrators, in the Circuit Court of Claiborne county. The bill was filed in November, 1845. The defendants appeared to the December term following, of the court, filed their answer, and moved to dissolve the injunction; and the chancellor

taking the motion under advisement, no decision was made until the June term, 1848, of said court, when the motion was sustained and the injunction dissolved. The complainants, at the same term of the court, prayed an appeal to this court. The cause not being regularly reached on the docket until March, 1853, the injunction was, by virtue of the appeal, continued in force until that time, when the decree of the chancellor being affirmed, the cause was remanded to the court below.

. The bar of the Statute of Limitations of seven years, (that being the period which had elapsed since the last execution on the judgment,) having become complete, this cross-bill was filed, praying that the plaintiffs in the judgment shall have a decree for the balance due upon the judgment; or, if this relief be thought improper, that then the defendants be enjoined from setting up the Statute of Limitations, as a defence to further proceedings to enforce the judgment by execution, or otherwise, at law.

The general rule, as argued by counsel, that the Statute of Limitations, in all cases where it is applicable, is regarded as a meritorious defence, may, to the fullest extent, be admitted. The same may be said, in respect to the argument that it is a defence which may avail a party as well in equity as at law; and it may further be admitted, that a court of equity will not lend its aid to deprive a party of the advantage of this defence, if fairly obtained. It may also be conceded, that if the advantage of this defence has arisen from the *laches* of the creditor, and not from the conduct of the debtors, that it is their privilege to make it, and it is not within the province of the court to question its propriety, on the score of morality.

But while these principles must be admitted as general rules, there are others of equal, if not of greater potency, which must not be overlooked under the peculiar circumstances of this case.

It is a familiar principle of equity, that a man shall not be allowed to avail himself of an unconscientious advantage acquired over his adversary. The inquiry in this case naturally forces itself upon the mind, why was it that the plaintiff at law delayed this long period to enforce his judgment?

Sugg et al. *v.* Thrasher et al.

The response is, that the debtors, by the means which they employed, forced him to delay. It was not an act of choice on his part, but one of legal compulsion. He but obeyed the process of the court, issued and kept in operation by the debtors, in the fruitless litigation which they carried on for this long period of time. That which is forced upon a party, cannot be said to be his voluntary act. He ceased to prosecute his remedy on his judgment, because such was the command of the process, which issued in pursuance of the prayer of the debtors.

But it is said that he might have proceeded to levy under his execution, though he was enjoined from selling. Such is not the language or the object of the injunction. If the execution could go into the hands of the sheriff at all, it would be for complete execution, and not for part. It is not to be supposed that the plaintiff was required, or even allowed to take out his execution, place it in the hands of the sheriff, and stand by and inform him how far to proceed, or how far he might proceed without incurring the penalties which the court would be bound to inflict for a contempt of the injunction.

But it is not necessary to dwell on this point. It is sufficient to know that the plaintiff only obeyed the process in refraining from enforcing his judgment; and it certainly comes with a bad grace from parties who availed themselves of all the means known to the law, to continue this process in full operation, now to complain of the plaintiff's obedience to that which he dared not, under what ought to have been heavy penalties, to disobey. The question then simply resolves itself into this. If the plaintiff voluntarily omitted to prosecute his remedy until the bar of the statute attached, it is his misfortune, and the debtor is at liberty to set up the defence, as in any other case. If, on the contrary, the plaintiff's failure in this respect must be attributed to the obedience which he was bound to pay to the injunction, the failure must be regarded as the legitimate result of the act of the debtors, and they cannot in conscience interpose the statute as a defence. Not a doubt can exist that it was alone the injunction, which caused the delay in issuing execution on the judgment; and such being

Sugg et al. *v.* Thrasher et al.

the fact, the case falls completely within the rule of equity already stated.

But it is said that the court will not by construction engraft upon the statute any other exception, than such as has been clearly expressed by the legislature. This rule is admitted to the fullest extent. The question is not one of either legislative or judicial exception, arising by construction of the statute, but whether, under the facts of the case, it is a defence of which the defendants can conscientiously avail themselves. It is admitted to be a defence at law, but such a defence as a court of equity acting upon the consciences of the parties will not permit them to make. Not that the defence of the Statute of Limitations is of itself unconscientious or immoral, but that it is rendered so by the facts and peculiar circumstances of the case.

The right asserted was as clear as it was when the plaintiffs first encountered the injunction, and the object is, to leave the parties, with respect to their rights, where they stood when the debtors commenced their litigation in the Superior Court of Chancery. No principle upon which the Statute of Limitations rests is violated by this course. Admit that it is what counsel say it is, a statute of repose, every principle of justice and sound policy forbids that parties should by improper means, or by abusing the process of the law intended for salutary purposes, bring themselves within its operation, and enjoy the advantage thus unrighteously acquired. To sustain such a principle, would be but holding out inducement to litigants to commence and protract, by artifice or other unauthorized means, vexatious litigation, with a view of finding immunity ultimately under the statute. When parties have fairly acquired this defence by regular course of things, they are entitled to the benefit of it, if they choose to make it, but they ought never to be encouraged to start prematurely in search of it, by protracting either unfounded or useless litigation.

Decree of the court below affirmed.

HANDY, J., concurred.
SMITH, C. J., dissented.

A petition for a re-argument was filed, but the re-argument refused.

NOTE.—The case of *Byrne* v. *Kilpatrick*, has been cited and relied on as authority in this case. Though that opinion is published as the opinion of the whole court, it is nevertheless only the opinion of the learned judge who delivered it, and of the chief justice. FISHER, J., at the time dissented, and gave his reasons from the bench for such dissent.