## John B. Nevitt v. John Bacon et al.

1. Statute of limitations: mortgage.—It is now the settled doctrine of this court, that the right of the mortgagee to foreclose the mortgage is not barred by the same lapse of time that would bar an action on the notes secured by it. See 2 S. & M. 697; 5 Ib. 650; 26 Miss. R. 611; 27 Ib. 772.

2. Same.—Upon the forfeiture of the condition of a mortgage, the mortgagee's right to file his bill of foreclosure accrues; and the Statute of Limitations commences running against such a bill from that time; and if the mortgagor continue in possession after forfeiture and after the maturity of the debt secured

Nevitt v. Bacon et al.

by the mortgage, a sufficient length of time to bar a right of entry on the mortgaged premises, or an action to recover possession of the mortgaged property, and an action at law, upon the notes or other evidences of debt secured by the mortgage, a bill to foreclose will be barred, unless the proof show sufficient facts to take the case out of the bar of the statute. *Benson* v. *Stewart*, 30 Miss. R. 49, 9 Wheat. 497; 2 Jac. & Walk. 234; 4 Kent, Com. 201; Angel on Lim. ¿ 453, *et seq.; Jackson* v. *Wood*, 12 J. R. 242.

3. SAME: SET UP BY DEMURRER.—A demurrer setting up the Statute of Limitations to a bill in equity will not be overruled, because the bill charges that the debt is due and unpaid, for notwithstanding that the theory of the Statute of Limitations is the presumption of payment from lapse of time, yet it is not this *presumption*, but the positive *bar*, created by the statute which constitutes the defence; and moreover, in such a case the demurrer is tantamount to a plea of the Statute of Limitations, and does not in law involve an admission of the truth of that allegation in the bill.

4. CHANCERY: DISMISSAL OF BILL WITHOUT PREJUDICE: EFFECT OF.—The effect of a decree by the chancellor, dismissing a bill without prejudice is, that such dismissal shall not operate as a bar to a new suit which the complainant might institute on the same cause of action; it does not deprive the defendant of any defence he may be entitled to make to the new suit; nor confer any new right or advantage on the complainant; and hence, it will not have the effect of excepting from the period prescribed by the Statute of Limitations, the time during which that suit was pending.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

This bill was filed by the appellees against the appellants, on the 7th day of May, 1855, and alleged in substance, that on the 26th day of May, 1847, the appellant, J. B. Nevitt, made his three promissory notes to the Planters' Bank; the first due in one year from that time, the second in two years, and the third in three years. That to secure the payment of these notes, the said Nevitt on the same day executed to said Planters' Bank, a mortgage conveying to said bank certain land and slaves therein mentioned and described, and also set out in the bill. That Nevitt covenanted by said mortgage, that he would pay said notes at the time they severally fell due, and it was further stipulated that if they were paid at maturity, the said mortgage should be null and void, but otherwise to remain in full force.

That in June, 1842, the Planters' Bank being indebted to complainants, as assignees of the United States Bank of Pennsylvania,

in part payment thereof transferred to them by delivery, the said three promissory notes, and that the same are now wholly due and unpaid.

That previous to the execution of said mortgage, the said Nevitt had mortgaged the same property to defendant, James Brown, to secure a debt due to him.    That Brown afterwards filed a bill in the Vice-Chancery Court, at Natchez, to foreclose said mortgage; and not making complainants parties, they petitioned said court to compel Brown to make them parties defendants, which was accordingly done.    That they filed their answer in said cause, in 1849, and prayed in their said answer, that an account of Nevitt's indebtedness to them might be taken, and that said property might be sold, and its proceeds might be applied, first to the payment of Brown's claim, and the surplus to the discharge of Nevitt's indebtedness to them.    That they also filed a petition in said cause to the same effect.    That said cause was tried in said Vice-Chancery Court, and the account asked for by complainants refused, and that complainants as well as Nevitt, appealed to the Superior Court of Chancery, and then to the High Court of Errors and Appeals.    That at the October term, A. D. 1854, of the High Court, the decree was reversed and the cause remanded for further proceedings.    That said High Court also refused to order an account for complainants, because they had not filed a bill to foreclose their mortgage, and offered to redeem from Brown, but that said decree was made without prejudice to complainant's rights.

The bill further alleges that this amount due from Nevitt to Brown is not yet ascertained, and they therefore cannot redeem or pay Brown's claim.    But the complainants in their bill offer to redeem from Brown as soon as his debt is ascertained.

The bill makes Nevitt and Brown parties, and prays that when they redeem from Brown, complainants may be substituted to his rights, and that an account be taken of the claim against Nevitt, and that the property be sold to pay the debt to Brown, and also their debt.

Nevitt demurred to the bill, setting up the Statute of Limitations, and assigned the following causes.

1. The limitation of six years, barring the three promissory notes.

2. The limitation of three years, barring a foreclosure of the mortgage as to the slaves.

3. The limitation of seven years, barring a foreclosure on the mortgaged land.

4. The limitation of ten years, barring a foreclosure in the land; and,

5. The limitation of seven years, barring the covenant in the mortgage.

The chancellor overruled the demurrer, and Nevitt appealed.

*W. P. Harris*, for appellant.

The questions arising in this case are—1st. Is there a limitation to the right of the mortgagee to foreclose, where the property has been suffered to remain in the *possession of the mortgagor?* 2d. If there be a limitation as to time, what length of time will bar this right, and from what period or event is this time to be computed? Is it to be computed from the date of the forfeiture, or from the commencement of an actual adverse possession hostile to the rights of the mortgagee?

The case of *Benson* v. *Stewart and Sandford*, Op. Book, 7509, decided by this court, determines that there is a limitation to the right to foreclose against a mortgagor in possession, and that the time within which this right shall be barred is seven years, and that courts of equity conforming to the policy of the Act of Limitations of 1844, adopt the limitation to the remedy for the recovery of lands fixed by that Act, to wit, seven years, as the limitation to the equitable remedy to foreclose a mortgage. So far as the present case depends on the question of time, it is not important whether we place the mortgage "on the footing of a bond debt," and adopt the corresponding remedy at law to recover the debt, or place it on the footing of a title or claim to lands, and adopt the corresponding remedy to recover lands, the limitation being the same in point of time as to both these remedies. But in determining the event which shall "set the statute in motion," it becomes important. If we put the mortgage on the footing of

a bond debt, the seven years is to be computed from the date of the forfeiture, without regard to the character of the mortgagor's possession. If, on the other hand, we put the right to foreclose upon the footing of a right to recover the lands, the question arises, and is presented in this case, whether forfeiture·and continued possession alone for seven years, are sufficient to bar foreclosure ; or whether that possession must have the characteristics of a hostile adverse possession *in point of fact,* in order to constitute a bar.

We propose to discuss the question thus presented by the light of general principles and of decided cases elsewhere, after disposing of the case of *Benson* v. *Stewart and Sandford,* decided by this court. We regard that decision as having established two propositions only. 1st. That as between mortgagor and mortgagee, there is a limitation to the right to foreclose, founded on the Act of 1844. 2d. That *when the right to foreclose, as against the mortgagor, is complete, and unaffected by the Statute of Limitations, a third person claiming the property and relying upon the Statute of Limitations as a bar to foreclosure, must show a title and possession adverse to the mortgagor.* A third person, under such circumstances, not being the debtor, and not sustaining the character of mortgagor, must put his defence upon grounds independent of the mortgagor, and his possession must be actually adverse to the mortgagor. If the bill, in the case cited, had been filed against the mortgagor and his vendee *after the seven years had elapsed,* without demand or acknowledgment to keep the mortgage alive, the vendee might have counted on the possession of the mortgagor, and the time that possession had continued ; for, although the right of the mortgagee had once been complete against the mortgagor, yet, having been lost by delay, the vendee might safely connect himself with the possession of one who was freed from the claim of the mortgagee. We at once perceive how the case would be varied, by supposing a state of facts where the mortgagee's right as against the mortgagor, exists in full vigor, as in the case cited, because, by connecting himself with a title and possession, against which there is a fixed right in the mortgagee, the vendee of the mortgagor takes upon his shoulders the burden

Nevitt *v.* Bacon et al.

of that right. It is obvious that this distinction was in the mind of the court, from the fact that the judge, in delivering the opinion, was careful to point out that the vendee held under the mortgagor, by virtue of an executory contract unfulfilled, and therefore not adversely to the mortgagor, against whom there was a right to foreclose, unaffected by the limitation of seven years. The soundness of the decision, in this view, is placed beyond controversy; but it is thought it leaves open to some extent, the question whether the possession of the mortgagor, after forfeiture, if continued for seven years, without entry, demand, or acknowledgment, is, of itself, sufficient to bar foreclosure. In regard to the *vendee* of the mortgagor, against whom there was a clear right to foreclose, the court say that his possession must be *adverse* in fact, but the court, in speaking of the *mortgagor*, say nothing of the character of his possession, but assume that the seven years is to be computed from the *date of the forfeiture.* We find in this a warrant to infer that the court regarded a possession which was in itself wrongful, as is that of a tenant at sufferance to which the mortgagor's possession, after forfeiture, has been assimilated, as sufficient to "set the statute in motion," because, as against such possession, the mortgagee, at the date of the forfeiture, had a complete right of entry and action to recover the lands. (See Black. Com. 3d Book, Right of Entry.) And there is no saving in the statute, in favor of persons who delay the assertion of a complete right of action beyond the prescribed period.

The question whether or not it is necessary to show by positive acts or declarations of the mortgagor, in addition to the mere lapse of time and continuance of possession without acknowledgment of the debt or of tenancy, that his possession is adverse, in fact, to the mortgagee, in order to found upon it the defence of the Statute of Limitations, depends for its solution mainly upon the view we are to take of the relation of mortgagor and mortgagee. Those who support the affirmative of this proposition, rely upon a barren theory of the common law—an exploded legal fiction, to wit: that the estate of the mortgagee is an estate upon condition, and becomes absolute after forfeiture; converting the mortgagor in possession into a tenant at sufferance, whose possession is, consequently, the

possession of the mortgagee. On this fiction, (for it is nothing more,) they found the proposition that the right to foreclose will continue forever, unless by some act, the mortgagor converts this fictitious tenancy into an actual hostile possession. What this act shall be, we know no rule by which to determine. If the mortgagee makes no demand for his debt, fails to enter for breach of the condition, or to forclose, his right to forclose will, nevertheless, be perpetuated, unless the mortgagor shall do some act beyond the mere continuance of a possession, the right to which he has forfeited, and the failure to pay a debt which he owes.

The Statute of Limitations proceeds on the principle that remedies shall be lost by delay in asserting them. To give effect to the statute, the party relying upon it is not required to do any thing more than to withhold the right. What is there in the case of a mortgagee, which should exempt him from the operation of this principle? Is a mortgagee so favored in equity that he should be placed above the policy of the Statute of Limitations? The mortgagor's possession, after forfeiture, is wrongful. The mortgagee has a complete right of entry and of action. He has a right to sue for his debt, or to bring ejectment for the lands.

The Statute of Limitations begins to run, in all cases, from the time there is a person in being capable of suing, and from the time a complete right of action exists.

Upon what principle is it that a mortgagee is exempt from the operation of the statute? The only answer to this is that by a fiction of law, he is the legal owner of the land. Is he so in point of fact? We say he is not. The mortgage, as we know it and deal with it, is a mere security for a debt—an incident to the debt. The relation of mortgagor and mortgagee, as we know it and deal with it practically, is that of creditor and debtor; the creditor holding the legal title to the property mortgaged, as a security for his debt, and for no other purpose. The mortgagor is the real owner; when in possession he is not responsible for rent. The mortgagee in possession, on the contrary, is responsible to the mortgagor for rent; and to use the language of Lord Hardwicke, " he is the bailiff of the mortgagor."

We insist that the question of limitation should be determined

with reference to the actual and practical nature of the mortgage, as we know it and deal with it every day, and not with reference to its theoretical character, or any character which is denied to it by courts of equity. There is a long train of decisions of great authority, in this country and in England, supporting this view of the mortgage, and the proposition that the mortgagor's possession, without acknowledgment, entry, or foreclosure, and his possession merely, when continued for the period adopted as a limitation, is sufficient to create a bar to the right to forclose.

The debt being the principal, and the mortgage the incident, whatever creates a presumption of payment, creates a presumption of the extinguishment of the mortgagee's title. So that, in the action of ejectment, brought by the mortgagee against the mortgagor, it is a good defence that the mortgagor has been in possession after forfeiture, for a length of time sufficient to create a presumption of the payment of the debt; for whatever creates a presumption that the mortgage debt has been paid, creates a presumption of the extinguishment of the mortgagee's title. *Work* v. *White*, 3 Bro. C. C. R. 289; *Christopher* v. *Sparks*, 1 Jac. & W. 235; 4 Kent, Com. 201, 202; Angel on Limita. 491-494; 5 Johns. Ch. 545; Lomax, Dig. 398; 7 Johnson, 283; 3 Ib. 383; 12 Ib. 242; 1 Greenleaf, Ev. 46. These authorities compute the time from the forfeiture, and look to possession as furnishing a presumption of title founded on the presumption of the extinguishment of the debt. An acknowledgment of the existence of the debt by the mortgagor, rebuts this presumption of title. When the mortgagee is in possession, after forfeiture, and takes an account, thereby admitting the relation of debtor and creditor, it rebuts the presumption of title in him, as it explains the nature of his possession. This is the principle of these authorities, and the meaning of Kent when he says, that the limitation to the right to foreclose and to redeem, is the same as that to the right of entry, and is "founded on a presumption of title," to wit: the presumption arising from possession alone. The doctrine sanctioned by these authorities springs from the actual nature of the relation of mortgagor and mortgagee, to wit: that of debtor and creditor.

In England, the proceeding to foreclose was, and is in practice,

a proceeding to establish the mortgagee's title to the land.   Fore-
closure there, with rare exceptions, is strict foreclosure, but with
us, strict foreclosure is never resorted to.   It is questionable
whether it would be allowed.   There the proceeding to foreclose
bears some resemblance to a proceeding to recover lands; here it
bears no resemblance to such a proceeding.   It is with us a pro-
ceeding to recover a debt to every intent.   It differs from the
ordinary remedy only in the form and in the nature of the decree,
which directs the sale of specific property, and does not bind the
property of the debtor generally.   This view of the relation of
mortgagor and mortgagee, being founded on the real nature of the
transaction, should, it would seem, govern us in dealing with it,
rather than that founded on an exploded legal fiction of the com-
mon law.

Why should we make a distinction between remedies purely equi-
table, which spring out of the same transaction?   Both in respect
to foreclosure and redemption, it is said that the limitation in equity
is analogous to the limitations at law; yet, in regard to foreclosure,
it is demanded that the analogy shall be carried out, not only as
to length of time and possession, but as to the character of the
possession.   It must be of a character which would bar the exist-
ing legal remedy by ejectment—an adverse holding in fact; why
should this be required?   The only answer which could be sug-
gested is, that unless the existing legal remedy by ejectment is
extinguished, the mortgagee might recover the land, and thus com-
pel redemption, and it would be useless to bar the equitable remedy
before the legal remedy becomes extinct.   But there is no force
in this suggestion, because the remedy by ejectment may be bar-
red, (and according to the New York authorities cited, it is barred
by time, which creates a presumption that the debt is paid,) and
yet there remain other remedies, the writ of entry and the writ of
right, by which the land might be recovered after the right of
entry is barred.   This was the case under the law as it stood prior
to 1844.

This feature of the law, leads irresistibly to the conclusion, that
a period of time only was aimed at in selecting the remedy by
entry upon lands, without regard to the condition of the existing

Nevitt v. Bacon et al.

legal remedies in the mortgagee. This is clearly what is understood in reference to the right to redeem when the mortgagee is left in possession. The mortgagor has no legal remedy at all. On the common law theory, he is without remedy and without right; yet, the limitation to the right of entry is selected. The condition of the legal remedy is not looked to in his case, why should it be looked to in the other? The right to redeem is in no way dependant on the right to enter; for it is clear, that the right to redeem, may, as in the case of a remainder-man, be lost before the right of entry accrues. Angell, Limitations, 128. The mortgagor's right to enter is dependant on his right to redeem, as the one may be barred by time before the other accrues. The right of entry then is selected as denoting a period of time only. The analogy goes no further. In the case of the mortgagee there are two remedies, one to recover the land by ejectment and the other to foreclose; but the right to foreclose does not depend on the right to enter, but rather the right to enter depends on the right to foreclose, because, as we have seen, if the right to foreclose is lost by the presumption of payment arising from lapse of time, the right of entry is lost also. It is said, however, that a mortgagee in possession after forfeiture, holds adversely to the mortgagor in point of fact. We say, in point of fact he does not. It is an inference of law drawn from a fiction. In point of fact, he is the bailiff of the mortgagor, and holds in subordination to the right to redeem. In form he is owner; in substance he is not. Adverse possession depends not upon legal inference. It is a matter of fact, and intention is an essential ingredient; and there is greater reason to hold, that the mortgagee must do some act denoting an intention hostile to the right to redeem in order to set the statute in motion, than there is in requiring such an act in the case of a mortgagor in opposition to the right to foreclose, if the substance of the transaction is to be looked to. And shall we not look to it?

Courts of Equity, in adopting a limitation to equitable remedies, act in *obedience* to public policy, as indicated in the Statute of Limitations; 2 Scho. & Lef. 630; and ought not to resort to a fiction, a mere technicality, in order to evade the spirit of the statute.

The mortgagee, after forfeiture, has a complete right of entry.

He can bring his action of ejectment, or he may forclose, or he may sue for his debt at law. The statute declares that the right to recover the land and the right to recover the debt shall be barred after the lapse of seven years from the time the right to recover accrued; this right to recover accrues from the forfeiture of the condition in the mortgage deed; shall the right to forclose exist longer than seven years? If so, upon what principle? Do we not create an *exception* to the statute, by thus exempting the remedy by foreclosure, from its operation? To hold that the possession of the mortgagor is the possession of the mortgagee, and to require some act distinct from failure to pay and retention of possession by the mortgagor, is to constitute adverse possession equivalent to a denial that there is any limitation to the right to foreclose. This is the opinion of the Master of the Rolls, in 2 Jacob & Walker, 234. If we regard the possession of the mortgagor as equivalent to that of a tenant holding over after his lease has expired, it is, nevertheless, wrongful, and gives rise to the right of action and of entry by the landlord. Can it be said, that this right of action is not affected by lapse of time, when there is no acknowledgment of tenancy, by the payment and reception of rent, nor any agreement that the tenancy shall continue? Adams, in his Treatise on Ejectment, page 58, puts the case of a tenant who held over after his lease had expired, but who, nevertheless, continued to *pay, and his landlord to receive the rent stipulated in the lease.* "This," says Adams, "was in the case of *Pellet* v. *Ferrers,* 2 Bos. & Puller, held to be evidence of a *consent* to the continuance of the tenancy, and that possession thus held for twenty years did not bar the right of entry." He seems to take it for granted, that without some act of recognition, the bar would have been complete. There must be such a possession as gives the right to sue, and a wrongful possession from its commencement gives this right. To require more than this, is to create an exception to the statute. A mortgagor holding after forfeiture, holds possession wrongfully, and if that possession continues without any recognition of the debt or of tenancy, for seven years, it has continued for a time which bars all remedies known to the law, to recover the land or the debt. The equitable remedy being, at the date of forfeiture,

complete, should be barred if delayed for seven years without something equivalent to an acknowledgment of the continuance of the relation of mortgagor and mortgagee.

*John B. Coleman* and *T. J. & F. A. R. Wharton*, on same side, filed elaborate written arguments.

*George S. Yerger*, for appellee.

[No memorandum of Mr. Yerger's argument has come to the possession of the reporter.]

HANDY, J., delivered the opinion of the court.

This was a bill filed by the appellees in the Superior Court of Chancery, on the 7th May, 1855, to foreclose a mortgage made by the appellant, bearing date the 26th May, 1841, to secure three promissory notes of the same date, to become due, one in one year, the next in two years, and the third in three years from that date.

The bill states that the appellant had made a prior mortgage upon the same property embraced in this mortgage, to James Brown, who filed his bill in the District Chancery Court at Natchez for a foreclosure, and that the appellees, upon their application, were made parties to that suit; that they prayed that an account should be taken of their mortgage debt, and that the same should be paid after the payment of the debt due to Brown; that an appeal was taken by the appellees from the decree of that court to the Superior Court of Chancery, and from the latter court to this court, and that at October term, 1854, this court refused to allow an account to be taken of the appellees' claim, because it was necessary that they should file a bill to foreclose their mortgage and redeem Brown's, and affirmed the decree of the Chancery Court dismissing the suit as to the appellees, without prejudice to their right to file their bill to foreclose as to any surplus of the property not required to pay the prior mortgage.

The bill offers to redeem the prior mortgage, alleges that the notes held by the appellees are unpaid, and prays an account and foreclosure.

The appellant demurred to the bill, setting up the Statutes of Limitation applicable to various aspects of the case as a bar; the demurrer was overruled; and this appeal was thereupon taken.

It appears that the last of the notes mentioned in the mortgage had been due nearly eleven years before the bill was filed, the two others having become due at a still earlier date.

The first position taken in support of the defence of the Statute of Limitations, is, that the right to foreclose the mortgage is barred by the same lapse of time that would bar an action at law upon the notes secured by it.

This rule is not without strong reason and principle, as well as respectable authority, to support it; and if it were a new question in this court, it would be worthy of grave consideration whether it should not be adopted. But the question has been frequently the subject of consideration here; and it is now as firmly settled as any doctrine of this court, that the remedy to foreclose the mortgage is not barred by the same lapse of time which bars an action upon the notes secured by the mortgage. *Miller* v. *Helm*, 2 S. & M. 697; *Miller* v. *Trustees of Jeff. College*, 5 Ib. 650; *Bush* v. *Cooper*, 26 Miss. 611; *Trotter* v. *Erwin*, 27 Ib. 772. We do not feel justified in changing a rule of this nature, thus established, and it must, therefore, be regarded as settled law.

The next ground of the defence set up in the demurrer and here relied on, is, that the period of time which would bar an action at law to recover possession of the mortgaged property, after condition broken, must bar a bill of foreclosure in equity; and, inasmuch as an action at law to recover possession was barred by the lapse of seven years after forfeiture, and more than ten years had elapsed in this case, the bill was barred.

This presents the question, whether any, and what time bars the right of the mortgagee to foreclose against the mortgagor continuing in possession upon condition broken.

It is insisted in behalf of the appellees, that the mortgagor is to be considered as the tenant at will or at sufferance, of the mortgagee, after forfeiture of the condition, and not as holding adversely, and that the Statute of Limitations does not begin to run

Nevitt *v*. Bacon et al.

until that relation is dissolved, and the mortgagor claims possession in opposition to the rights of the mortgagee.

By the strict rules prevailing at law, the mortgagor was a mere tenant, holding subject to the right of the mortgagee to enter immediately and even before default, unless there was a stipulation to the contrary.   4 Kent, Comm. 159, (8th edit.)   This was upon the technical rule that the conveyance was upon condition subsequent, to be performed by the mortgagor; and until that was shown to have been performed, the estate vested in the mortgagee. And upon this principle, it was anciently held that whilst the mortgagor remained in possession without a covenant for that purpose, he was a tenant at will.   He was at a later period held to be a tenant at sufferance.   The relations of the parties were thus regarded under technical rules at law.   But these rules have been materially changed by courts of equity in more modern times, and principles have been established of a more liberal character towards the rights of the mortgagor, and more in consonance with the true spirit and the substantial justice of such contracts.   This doctrine is, that the mortgage is a mere security for the debt, and that until a decree of foreclosure, the mortgagor continues the real owner of the fee, and the equity of redemption is considered as the real and beneficial estate.   4 Kent, 163.

The relation which existed between the mortgagor in possession before default, and the mortgagee at law, seems to have been a matter of great uncertainty.   It is sometimes said to be a tenancy at will, and again it is variously called a tenancy from year to year, or at sufferance, or *quasi* at sufferance.   Chancellor Kent calls it a "peculiar relation," and considers the name *mortgagor* as conveying the best idea of what he calls his "anomalous character." But by whatever term it may be designated, it appears to be plain that the relation of landlord and tenant cannot be said to exist to all intents and purposes, where the mortgagor retains possession after condition broken, in the absence of any agreement upon the subject in the deed.   The mortgagor, before foreclosure, is not liable to the mortgagee for use and occupation, is not bound to keep the premises in repair, and is regarded as a freeholder, subject only to the equitable right of the mortgagee to foreclose in

VOL. III.—15

equity, or to enter at law, for the purpose of obtaining payment of his debt. He is, then, rightfully in possession until the mortgagee exercises his right according to law to turn him out.

The question, then, is, within what time must this right be exercised, and what lapse of time is necessary to create the legal presumption that the right has been surrendered or lost? From what time does the duty to exercise this right begin?

It must commence at the time when the right of foreclosure accrued, or it can have no commencement; and unless it expire by the same lapse of time that would bar the right of entry or the recovery of possession at law, it is without limitation, and may be asserted against the continued possession of the mortgagor at the most remote period. Where possession has been delivered to the mortgagee, it is well settled that the right to redeem is barred by the same length of time that would bar his recovery of possession at law. And the interest of the mortgagee is a much less beneficial estate than that of the mortgagor in possession. The mortgagee in possession before foreclosure, holds subject to the right of the mortgagor to redeem. But after the period of the limitation of an action to recover possession at law, that right is presumed to have been released. So the mortgagor in possession holds subject to the right of the mortgagee to foreclose; and no reason can be perceived why payment of the debt should not be presumed from the same lapse of time, unless indeed no lapse of time can bar the claim of the mortgagee, which cannot be pretended.

It is not material to determine whether the possession of the mortgagor is to be considered as adverse to the right of the mortgagee or not. The substantial interest which the mortgagee has in the mortgaged premises, is, in equity, a claim upon them for the payment of his debt; and the question is, after what period of time and under what circumstances will that debt be presumed to be paid, and his claim upon the property depending upon it, discharged. This is settled in many recent cases, and upon principles which we consider altogether sound and just. The Supreme Court of the United States say in *Hughes* v. *Edwards*, "that where a mortgagor has been permitted to retain possession, the mortgage will, after a length of time, be presumed to have been discharged

by payment of the money or a release, unless circumstances can be shown, sufficiently strong to repel the presumption; as payment of interest, a promise to pay, an acknowledgment by the mortgagor that the mortgage is still existing, and the like. 9 Wheat. 497; *Christophers* v. *Sparke*, 2 Jac. & Walk. 234; 4 Kent, Comm. 201, 202; Angell on Lim. §§ 453, 454, 455, (3rd edit.) And the period fixed by the Statute of Limitations as barring an action for the recovery of possession, is held to be the fit and proper limitation to a bill of foreclosure. 4 Kent, 202; *Jackson* v. *Wood*, 12 John. Rep. 242.

This rule was held by this court in *Benson* v. *Stewart et al.*, 30 Miss. 49, and we find no reason to change it.

And here it may be proper to remark, that what is said in that case, with respect to adverse possession, had reference to the party who purchased from the mortgagor in whose behalf the statute was not a bar when the bill was filed; and that party, not being protected by an adverse possession, under his purchase from the mortgagor, for a sufficient length of time to be protected by the bar, he would occupy the position in which the mortgagor stood, in whose favor the period of time necessary to constitute the bar had not run when the bill was filed against him. But it was not intended to say, that as between mortgagor and mortgagee, where the former had retained possession, after forfeiture, for a sufficient length of time, to constitute a bar under the statute, it was necessary that there should be, technically, an adverse possession by the mortgagor against the mortgagee, in order to render the defence available.

We are satisfied that both principle and authority sanction the rule, that when the mortgagor has continued in possession for a sufficient length of time after forfeiture, and after the maturity of the debt secured by the mortgage, to bar the right of entry of the mortgaged premises, or an action to recover possession of the property conveyed, and an action at law upon the notes or other evidence of debt, a bill of foreclosure will be barred, unless there be circumstances shown sufficient to take the case out of the bar of the statute. And there being no such circumstances shown in this

case, the statute of seven years was a bar, and the demurrer was a good defence to the bill.

Two other grounds are relied upon in behalf of the appellees, against the bar of the statute.

The first of these is, that as the bill alleges that the debts are due and unpaid, and that is admitted by the demurrer, this rebuts the presumption of satisfaction created by the statute, and that presumption cannot prevail. The fallacy of this view is apparent from two considerations. First. The defence of the statute, set up by demurrer, is tantamount to a plea of the statute, and must be taken with reference to the particular ground of defence set up in it. Second. It is true, that the theory upon which the Statute of Limitations is founded is the presumption of payment from lapse of time. But the defence set up is not the *presumption* on which the statute is founded, but *the bar* created by the positive provisions of the statute. The principle upon which the statute is founded is sometimes useful to be considered in applying it to doubtful cases ; but when the provisions are plain and positive, we have nothing to do with the principles upon which they are founded, in applying them to cases clearly embraced by them. The defence is the statute itself, and not the theory upon which it was founded.

The other ground is, that the former suit having been dismissed as to the appellees, without prejudice to their right to bring another suit, they are now entitled, in virtue of the privilege thereby reserved to them, to deduct the time of the pendency of that suit. This construction is justified neither by the terms nor the legal effect of the order referred to. The purport of such an order is, that the dismissal shall not operate as a bar to a new suit which the party might institute. Story, Eq. Pl. § 793. It could never have been intended, even if it was competent for the court, to debar the appellant of any defence upon the merits of the case to which he was entitled by law ; for that would have been to bestow a privilege upon the appellees, and at the same time to prejudice the rights of the appellant upon a matter not then presented for the determination of the court.

Let the decree be reversed, the demurrer sustained, and the bill dismissed.