## M. G. WILKINSON et al. *v.* R. FLOWERS et al., Adm'r, &c.

1. CHANCERY: STATUTE OF LIMITATIONS: HOW PLEADED.—The defendant cannot avail himself of the Statute of Limitations to a bill in equity, unless he distinctly show by demurrer, plea, or answer, that he intends to rely on that defence; and this is so, although the bill shows on its face that the time prescribed as a bar has elapsed. See *Patterson* v. *Ingraham*, 23 Miss. R. 87.

2. MORTGAGE: STATUTE OF LIMITATIONS: BILL TO FORECLOSE WHEN BARRED —It is now the settled doctrine of this court, that the right of the mortgagee to foreclose is not lost because an action for a recovery of the debt secured to the mortgagee is barred by the Statute of Limitations. See *Nevitt* v. *Bacon*, 32 Miss. R. 212.

3. SAME.—Upon the forfeiture of the condition of a mortgage, the right of the mortgagee to file his bill to foreclose accrues, and the Statute of Limitations commences to run against such a bill from that time; and the period prescribed by the statute for an action for the recovery of the possession of personal property, or for an entry on land, is the period in which a bill to foreclose a mortgage on such property will be barred, when possession of it remains in the mortgagor.

4. CHANCERY: MORTGAGE: BILL TO FORECLOSE: PLEA OF THE STATUTE OF LIMITATIONS.—A plea of the Statute of Limitations to a bill to foreclose a mortgage, which sets up the bar of the mortgaged debt alone, without setting up the possession by the mortgagor of the mortgaged property, after the forfeiture of the condition of the mortgage, for a period sufficient to bar an action for its recovery, is bad.

5. SAME: EFFECT OF PRESUMPTION OF PAYMENT ARISING FROM BAR OF STATUTE OF LIMITATIONS.—Actual payment of the mortgaged debt is a good defence to a bill to foreclose; but the presumption of payment arising from the bar of the Statute of Limitations against an action to recover the debt, will not have that effect.

6. SAME: DEFENDANT PREVENTED FROM RELYING ON BAR OF STATUTE OF LIMITATIONS CAUSED BY INJUNCTION.—A court of equity will not allow a defendant to avail himself of the Statute of Limitations, where the delay in bringing the suit was caused by his unconscientious conduct, in procuring and keeping in force an injunction against the collection of the debt during the time in which the bar attached. See *Sugg* v. *Thrasher*, 30 Miss. R. 135.

7. PRINCIPAL AND SURETY: JOINT MAKERS: SUITS AGAINST.—The holder of a note may dismiss his suit as to principal, and proceed to judgment against the sureties, if they be joint makers and not indorsers.

ERROR to the Chancery Court of Hinds county.  Hon. John Watts, chancellor.

It appears from the record, that on the 5th of August, 1837, Arch. Anderson and Richard Flowers, as administrators of Banbury Flowers, deceased, sold under the order of the Court of Probates a tract of land, belonging to said intestate, for the sum of $6051.  At this sale, A. G. Wilkinson became the purchaser, and gave his three several notes, with Duncan Wilkinson and Allen Stewart as joint makers and sureties, for the purchase-money. The two notes first falling due were paid, at maturity.  On the third note, suit was instituted against all the makers, and A. G. Wilkinson, the principal, dying during its pendency, the action was discontinued as to him, and judgment was rendered, on the 23d October, 1840, against Duncan Wilkinson and Allen Stewart, for the principal and interest of the note, then amounting to $2135 25. Execution was issued on this judgment, and on the 24th March, 1841, was levied on the property of Stewart.  In June, 1841, Stewart filed his bill in the Superior Court of Chancery, alleging that Duncan Wilkinson, his co-surety, was insolvent, and that A. G. Wilkinson, the principal, had died, leaving no property except the said land bought at the administrator's sale, and that this land was primarily liable for the payment of the judgment.  To this bill the administrator and heirs of A. G. Wilkinson, and the present defendants in error, were parties defendant.  The bill sought an injunction against the collection of the judgment from Stewart, until the said land could first be applied to the payment of the judgment.  An injunction was granted as prayed for, and was afterwards, in December, 1842, dissolved.

On the 28th of April, 1843, the administrator, widow, and heirs of said A. G. Wilkinson, the principal, and Duncan Wilkinson and Allen Stewart, the sureties, filed their bill in the Superior Court of Chancery, against the present defendants in error, the administrators of Banbury Flowers, in which they alleged the invalidity of the said sale of the land to A. G. Wilkinson, for want of a

compliance by the Court of Probates and the administrators of Flowers, with the statute authorizing the sale; and also alleging that Flowers had no title to the land. The complainants in that bill sought a rescission of the said contract of purchase, and asked that the money theretofore paid be refunded, and that an injunction be granted against the collection of the judgment rendered, as before stated, in 1840, against Duncan Wilkinson and Allen Stewart. In the bill it is also stated, that "the possession of the land had been abandoned by those who claim under said A. G. Wilkinson, and that his widow had offered, and still offers, to relinquish the dower which had been allotted to her in the same; and that they had repeatedly offered to rescind the trade and surrender the land, which the administrators of Flowers refused." An injunction was granted, as prayed for.

This bill was dismissed on the 15th February, 1851, and one month allowed to the complainants therein to perfect an appeal by giving bond. The appeal however was never perfected.

On the 28th of April, 1853, the present defendants in error, the administrators of said Banbury Flowers, filed this bill, alleging the foregoing facts and making exhibits of the said two suits in equity; and also alleging that the said judgment rendered against the sureties in 1840 was still unsatisfied; and seeking to procure a sale of the land under the statutory mortgage to satisfy the same. To this bill, the widow, administrator, and heirs of A. G. Wilkinson, and also Duncan Wilkinson, were made parties defendant.

To this bill the defendants answered, denying the rendition of the judgment against D. Wilkinson and Allen Stewart in 1840. The answer then proceeds as follows: "And said respondents further answering, by way of special demurrer to said bill of complaint, say, that if it be true as stated by complainants that said promissory note so as aforesaid lately falling due now remains unpaid, the same having been made more than seven years next before the filing of this bill of complaint, is barred by the Statute of Limitations. Wherefore they crave the judgment of this court, if complainants ought further to maintain their action."

Upon final hearing, the chancellor decreed a sale of the land to pay the balance due on the purchase. From this decree the defendants prosecuted this writ of error.

*John D. Freeman*, for plaintiffs in error.

*W. P. Harris* and *T. J.* and *F. A. R. Wharton*, for defendants · in error,

Insisted, that as the Statute of Limitations was not pleaded against the mortgage but against the note, it was no bar to this suit. See *Nevitt* v. *Bacon*, 32 Miss. R. 212 ; *Benson* v. *Stewart*, 30 Ib. 49 ; and, moreover, if the statute were properly pleaded it would not apply in this case, as the complainants had been restrained by injunction from collecting their debt. *Sugg* v. *Thrasher*, 30 Miss. R. 135.


HARRIS, J., delivered the opinion of the court.

The defendants, as administrators of Banbury Flowers, deceased, by order of the Probate Court of Covington county, sold certain lands of the deceased on the 5th January, 1837, to Archibald G. Wilkinson for $6051, and took his three promissory notes, with Duncan Wilkinson and Allen Stewart as joint makers, and executed to him a deed for said land. The two first notes were paid at maturity ; but the last note not being paid, suit was instituted in the Circuit Court of Covington county against all the parties. The suit was dismissed as to Archibald G. Wilkinson (who died pending the action), and judgment was rendered against the other parties on the 23d October, 1840, for $2133 25. Execution was issued and levied on the property of defendant Stewart, on the 24th March, 1841. In June, 1841, Stewart filed his bill to enjoin the sale of the said property under said judgment, upon the ground that the said Archibald G. Wilkinson left no property except the land purchased, and for which said note was given. That said land was first liable to pay said note and judgment, and that Duncan Wilkinson was insolvent. The administrators and heirs of A. G. Wilkinson were made parties, and also the complainants in this bill. The injunction was granted, and afterwards dissolved on motion at the December term, 1842, of the Chancery Court.

Afterwards, on the 28th of April, 1843, Daniel McFarland, as administrator of A. G. Wilkinson, deceased, with his widow and heirs, and also Duncan Wilkinson and Allen Stewart, said joint makers of said notes, filed their bill, and obtained an injunction

against said judgment, alleging that said sale by the said administrators of Banbury Flowers was void; that the heirs of Wilkinson had abandoned the land on that account, and had repeatedly proposed to give up the land and take up said note. On the 15th of February, 1851, this injunction was dissolved and bill dismissed.

On the 28th of April, 1853, the complainants in this bill now pending, filed this proceeding, stating that no part of said note or judgment founded on it has ever been paid, claiming the statutory mortgage on said land, for which said note was given, and praying a decree for its sale, to satisfy said mortgage. The heirs of A. G. Wilkinson, and the widow, and administrators, are made parties.

They answer, denying that there is any such judgment, and insist that the *note* is barred by the Statute of Limitations of *seven* years. But they do not assert title to the *land*, as against the mortgage, by reason of the statutory bar of the right of entry, or of the action of ejectment.

The cause was submitted to the chancellor on final hearing, on bill, answers, exhibits, and proofs, and a decree rendered for complainants; and this writ of error is prosecuted to reverse said decree.

Two grounds of error are insisted on in the brief of counsel for the plaintiffs in error. 1st. That complainants' claim was barred by the Statute of Limitations; and, 2d. That the judgment obtained by complainants in the Circuit Court of Covington county, on the last note given for the land sought to be subjected to its statutory lien, was void, because the suit was dismissed as to the maker, and judgment rendered against the other joint makers.

To understand properly the application of the first error insisted on by counsel, it will be necessary to recur to the answers of the several defendants, to ascertain the pleading and issues presented in the record.

The bill seeks to enforce the statutory mortgage on the land in question, created by purchase at administrator's sale, under an order of the Probate Court. The answers of the several defendants deny the liability of the land to this statutory lien, because the *note*, which that lien was intended to secure, is barred by the Statute of Limitations of seven years. In order to avail himself of the defence of the Statute of Limitations, a defendant must

show, by demurrer, plea, or answer, that he *intends* to rely upon it, or he will be held to have waived such defence. *Patterson* v. *Ingraham*, 23 Miss. R. 87. And this is so, although it appear on the face of the bill, that the time prescribed as a bar has elapsed. Ib. 87.

A party cannot be permitted to make one issue by his pleadings, and another by his proof; or to rely upon one defence in his answer, and to avoid liability by proof of another and wholly different defence.

It is now the settled doctrine of this court, that the right of the mortgagee to foreclose a mortgage, is not barred by the same lapse of time that would bar an action on the notes secured by it. *Nevitt* v. *Bacon*, 32 Miss. 212, and cases cited.

Upon the forfeiture of the condition of the mortgage, the mortgagee's right to file his bill of foreclosure accrues, and the Statute of Limitations commences running against such a bill from that time.

The period of limitation to a bill of foreclosure, is the time fixed by the Statute of Limitations, as barring an action for the recovery of possession of the mortgaged premises. *Nevitt* v. *Bacon*, 32 Miss. 227; *Benson* v. *Stewart et al.*, 30 Ib. 49; 4 Kent. 402; *Jackson* v. *Wood*, 12 John. R. 242.

Instead, therefore, of pleading that the *note* mentioned in the bill was barred by the Statute of Limitations, the answer should have set up and relied upon the mortgagor's possession, after forfeiture, for a period long enough to bar the right to recover the possession of the mortgaged premises, under the Statute of Limitations.

The plea of the Statute of Limitations in equity is not required to be formal or technical. A substantial statement of the defence, intended to be relied on, so as *distinctly and clearly* to advise the opposite party of its true character, is all that is required in equity practice. Where, however, the language used is equivocal, or subject to two constructions, one of which would present one character of defence, and the other a different one, justice to the opposite party will not allow that the defendant should avail himself of proof applicable to either.

In the case before us it is manifest, both from the language of the several answers and from the position assumed by counsel in their brief filed for plaintiff in error, that they intended to set up

the defence that the lien of the statutory mortgage was lost, and ceased when the Statute of Limitations barred the *note*. We have already seen that by express adjudication in this court, it is held that "the right of the mortgagee to foreclose his mortgage is not barred by the same lapse of time that would bar an action on the *notes* secured by it." *Nevitt* v. *Bacon*, 32 Miss. R. 212, and cases cited. That the *note* has been barred by the Statute of Limitations applying to promissory notes, does not affect the mortgagee's right to perfect his legal title by proceeding in equity to foreclose the equity of redemption remaining in the mortgagor. And the period prescribed by the Statute of Limitations as a bar to an action at law to recover possession of the mortgaged property, after condition broken, is the period within which such proceeding must be instituted.

The promissory note is barred in six years. The right of entry, and the right of action to recover the possession of lands held adversely, is only barred in seven years; and this is the time when the right of *foreclosure* ceases, and not before. So it is held by this court in *Nevitt* v. *Bacon*, 32 Miss. Rep. 226, and *Benson* v. *Stewart*, 30 Ib. 49.

The possession of the mortgagor after forfeiture, in the absence of any proof to the contrary, is deemed adverse to the title of the mortgagee. And the failure of the mortgagee to assert his rights against this adverse possession, until the Statute of Limitations bars his right of entry, or his right of action, to recover the possession of the premises, or to enforce his lien, raises a presumption, both at law and in equity, that his rights have been satisfied, or extinguished, and his mortgage discharged, upon which the statute interposes its bar. The mortgagee having technically the legal title, by virtue of the mortgage, and the mortgagor retaining only the *equity of redemption*, when a bill is filed to foreclose the equity of redemption, it is in effect a proceeding to assert the legal title of the mortgagee, or to bar the equity of the mortgagor, and to divest him of the possession of the premises. It becomes, therefore, a question of title. The mortgagor may show that the title of the mortgagee has been extinguished in equity by the payment of money due on the mortgage; but as the remedy sought by the mortgagee is on his title by the mortgage, and not on the note, the mortgagor

cannot, on a bill of foreclosure, avail himself of the *presumption* of payment, which the statutory bar of the note raises in his favor, when an action is brought on the *note ;* but he is compelled in his answer to plead the payment in discharge of the mortgage, and to prove it *aliunde* on the hearing, in order to avail himself of that defence.

The Statute of Limitations procceds not so much upon the idea that the *debt* has been actually extinguished by payment, as upon the denial of all remedy upon the instrument by which the debt is evidenced.

It is only, therefore, *in an action on the note* that the presumption of payment arising from the statutory bar (applicable to promissory notes), can be indulged.

The act provides that " actions on promissory notes shall be commenced and prosecuted within six years after the right of action shall have accrued." But the remedy in equity on the mortgage is not affected by this statute, and is only barred by the adverse possession of the mortgaged premises, for more than seven years from the date of forfeiture, by another section of the act.

To allow the plea that the *note* is barred by the Statute of Limitations as a defence to a bill of foreclosure, would be to deprive the mortgagee of the greater security afforded by his mortgage lien, and to enable a party who held the possession of the mortgaged premises, even under the mortgagee, or not adversely, wholly to defeat its operation, without a pretence of title, or presumption of payment.

In this case, the record shows that as late as 1851, and dating from April, 1843, these defendants were not claiming the title or possession of the land in controversy.

Even, however, if we were mistaken in this view of the effect of the defendant's plea of the Statute of Limitations, upon the authority of the cases of *Sugg* v. *Thrasher*, 30 Miss. R. 135, and *Work* v. *Harper*, 31 Ib. 107, we should regard the plea of the Statute of Limitations, if ever so perfectly and formally pleaded, as ineffectual as a defence under the circumstances of this case.

The record shows that no diligence has been wanting on the part of the complainants, in endeavoring to enforce the payment of this debt. Judgment was obtained at the earliest period, and its collec-

tion enjoined by Stewart, one of the defendants and original joint makers of the note sued on. As soon as this injunction was dissolved, these defendants, with others, filed their bill, again enjoining the collection of this debt, and the hands of complainants were tied up thereby until the 15th February, 1851, from the 28th of April, 1843, until after the statute had interposed its bar.

A court of equity will not permit a party to avail himself of an unconscientious advantage obtained by his own act, and without the fault of his adversary. *Sugg* v. *Thrasher*, 30 Miss. 135.

The last ground of error insisted on is, that the judgment obtained in the Circuit Court against Duncan Wilkinson and Allen Stewart, the joint makers with A. G. Wilkinson of the note sued on, as appears by that record, was void, because the suit was dismissed as to A. G. Wilkinson.

This assignment seems to be based upon the idea that the record of that judgment shows that the defendants against whom judgment was rendered were only sureties. There is nothing, however, in the record, showing that they were sureties. Even, however, if this were so, it would not render the judgment void. There is no statute in this State, nor was there at the date of that judgment, even requiring *suit* against all of several joint makers, where some of them were sureties. The Act of February, 1842, Hutch. Code, 819, has reference only to judgments on garnishment; and the Act of May, 1837, Hutch. Code, 852, has reference only to indorsers. See *Work* v. *Harper*, *supra*, and cases cited.

A full answer to this assignment, however, even admitting that the judgment had been void, is that this is not a proceeding upon the judgment or note, but wholly independent of either. It is a proceeding upon the mortgage given by statute to foreclose the equity of redemption remaining in the mortgagor.

There is no error therefore in the judgment below, and it should be affirmed, which is accordingly hereby ordered.