# SILAS LENT v. CHARLES MORRILL, O. F. MORRILL, WILLIAM A. GROVER, AND D. W. CHAMBERS.

RENEWAL OF NOTE EXTENDS LIEN OF MORTGAGE.—A renewal of a note, secured by a mortgage upon lands, so as to extend the time within which it would be barred by the Statute of Limitations, carries with it an extension of the lien of the mortgage to the time when the note will expire by the terms of the renewal, if at the time the note is renewed the maker of the note and mortgagor is still the owner of the lands mortgaged.

SAME.—If the maker of the note and mortgagor sells the land mortgaged to secure the same, and while divested of the title extends the time of payment of the note, and afterwards becomes re-invested with the title, this re-investment extends the lien of the mortgage, so that it will remain valid until the note, as extended, is barred by the Statute of Limitations.

EXTENSION OF NOTE EXTENDS MORTGAGE AS AGAINST INNOCENT PURCHASER.—If the maker of a note secures the same by a mortgage on lands, and while still the owner of the mortgaged property extends the time of payment of the note, or if he divests himself of the title to the lands, and then extends the time of payment of the note, and afterwards acquires title, the purchaser from the mortgagor of the lands mortgaged takes the same subject to the lien of the mortgage, until the note is barred by the Statute of Limitations, although at the time of his purchase he did not know that the time of payment of the note had been extended.

SALE BY MORTGAGOR WITH COVENANT OF WARRANTY.—Where a note secured by mortgage on lands is extended by the maker, and the lien of the mortgage thereby extended, and the maker and mortgagor afterwards sells the lands, with general covenant of warranty, to one ignorant of the extension, the covenant in the deed will not defeat the extension of the lien of the mortgage.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Gregory Yale*, for Appellants.

The defendant Grover was a stranger to this land at the time the plaintiff agreed to extend the time of payment with him, and at the date of the assignment, and had no right whatever to make any contract affecting the premises. These agreements were absolutely void.

The accidental circumstance of the reconveyance of the premises to William A. Grover lends no feature favorable to the plaintiff.

The defendants derive title through Lester K. Grover from the original Alcalde grant of the lot of which these premises are a part. That the title came immediately from William A. Grover to them, after the reconveyance to him, does not connect the transaction with his previous ownership of the land, when he executed the mortgage, any more than if he had never owned it. The land and the defendant were separated from each other, and remained so from the 20th of August, 1856, to the 17th of December, 1859, some three years and five months. So far as William A. Grover is concerned, and when, on the latter date, he was re-invested with the title, that act did not again unite the debt and the land.

He then conveys by general warranty, which necessarily operates as a covenant against this mortgage to Charles Morrill on the 19th of July, 1860, having done no new act in the meantime to operate as a new incumbrance on the land.

The question of notice has nothing to do with this case.

The records are open to the inspection of every one; and when a man finds a recorded mortgage out of date, he has notice of the law that such a mortgage cannot be enforced.

If he inquires, and discovers that part payment of principal and interest has been made upon the mortgage, but in a way rendered valid by law, he is still at liberty to buy, and he will not be bound by such part payment.

*S. W. Holladay*, for Respondent.

In reply to the objection that the extension agreement could not affect or extend the mortgage, because Grover had already sold the land, we say, that Grover after that conveyance became again the owner of the land, standing in his original position as debtor and mortgagor.

Had he, therefore, been the sole defendant, he would have been estopped from denying his right to extend the mortgage.

His. extension agreement, although only executory at the time it was made, when the land was conveyed back to him had been faithfully observed by the plaintiff in his forbearance to sue; it was then fully executed as distinguished from what it was at its date—merely executory. When Grover became again the owner of the land, having had all the benefit of the extension agreement, he could not be heard to question its validity.

He was then estopped. His interest acquired subsequent to the agreement was sufficient to feed the estoppel.

If Grover had the power to extend the time of payment while the debt and the land were both united in him, (as is practically conceded by appellants' counsel,) it seems natural that the same consequence should follow when, by getting back the title, the debt and the land became united in him— the interest acquired by the conveyance feeding the estoppel contained in the extension agreement, as shown in the brief of Mr. Carey.

*James C. Carey*, also for Respondent.

But are the Morrills and Grover in a position to attack this agreement? It will be remembered that Lester K. Grover reconveyed the fee to Wm. A., December 29th, 1859, and he of course took subject to his own mortgage and extension agreement. He would be estopped to deny that agreement or its effect. He adopted it and continued to pay interest up to July 13th, 1860, when he sold the fee to C. Morrill. While the fee was in Lester K., Morrill could not complain, for he was a stranger to the property, and when he purchased it the agreement bound his grantor, although it may have been invalid when made as to Lester K. Grover. Wm. A. Grover would have been estopped by it, and the Morrills claiming through him, it estops them with or without notice.

" The interest, when it accrues, feeds the estoppel."

This rule is well illustrated in the *Rawlin Case*, 4 Co. R. 52. A man leased land in which he had nothing, and afterwards

bought the land.   The lease was held good against him and all parties to whom the estate might come.   He was estopped to deny his lease, and when the interest accrued upon which it was to operate, it fed the estoppel, and the lease was held good.   (2 Smith's Leading Cases, p. 500, *et seq.*; Id. 545–551.)

It was held in like manner in *Helps* v. *Hereford*, 2 Barn. & Adolp. 242, that a fine levied by an heir who had no estate in the land at the time, either contingent or vested, bound the estate by estoppel upon its subsequent descent from his ancestor.

To the same point: *Webb* v. *Austin*, 7 Manning and Granger, 701; *McKenzie* v. *Lexington*, 4 Dana, 129; *Sturgeon* v. *Springfield*, 15 Meeson & W. 224.

It was held in *Somers* v. *Skinner*, 3 Pick. 52–58, that where a grantor conveyed land with warranty in which he had nothing at the time, he was not only estopped in claiming in opposition to his deed, but that an estate which vested in him subsequently was bound by the estoppel and transferred to the grantee.

In *White* v. *Patten*, 24 Pick. 324, the Court went still further, and held that where a party who was in actual possession of land, but without title, *mortgaged* it with warranty, and afterwards acquired a good title by conveyance, the warranty took immediate effect on the land thus acquired, and transferred it to the mortgagee not only as against the mortgagor, but as against those claiming under him subsequently to the conveyance.

To the same point: *Clark* v. *Baker*, 14 Cal. 612, and cases cited by Botts, p. 621; *Mack* v. *Willard*, 13 N. Hamp. 389; *Baxter* v. *Brodbury*, 20 Maine, 26; and authorities cited in *Doe* v. *Oliver*, 2 Smith's Leading Cases, 551.

By the Court, Shafter, J.

This is an action to foreclose a mortgage.   The complaint describes a promissory note, and a mortgage executed to secure its payment; it states the amount due, and asks a

decree of foreclosure and sale of the premises, waiving personal judgment against either of the defendants for any deficiency after applying the proceeds of sale of the land to the satisfaction of the judgment.

William A. Grover, the maker of the note and mortgage, was served with process, but failed to answer, and a default was entered against him. The other three defendants— Charles Morrill, O. F. Morrill and D. W. Chambers—answered separately, and the plaintiff interposed a demurrer to the greater portion of each of the answers, on the ground that the facts therein stated constituted no defense to the action. The Court below sustained the demurrers, and the defendants failing to amend, and the cause coming on regularly for an assessment of damages, a final decree was rendered for the plaintiff, in conformity to the facts and prayer of the complaint. From this final decree the appeal is taken.

The complaint is verified, and its matter may be briefly stated as follows :

1st. That on the 17th of January, 1855, the defendant, Wm. A. Grover, executed his note to Messrs. Newhaus for four thousand five hundred dollars, payable two years thereafter, at one and three quarters per cent per month interest.

2d. At the same time, to secure the payment of the note, Grover executed a mortgage upon the described land, which mortgage was duly acknowledged and recorded on the same day in the county where the land lies.

3d. That on January 13, 1857, the principal sum, four thousand five hundred dollars, and five hundred dollars interest, was due on the note and mortgage, when Messrs. Newhaus, the payees, assigned the same to plaintiff, in consideration of five thousand dollars paid therefor, and the deed of assignment was duly acknowledged and recorded at its date. The deed of assignment also recited said sum of principal and interest as then due.

4th. At the time of said assignment, plaintiff and the defendant Grover, the mortgagor, agreed in writing, signed by them, that the above named sum was due, and that Grover

should pay plaintiff interest on said sum of five thousand dollars, at one and one half per cent per month, and that the time for payment of said note and mortgage should be extended for two years from that date, *i. e.*, two years from February 13, 1857.

5th. Two years thereafter—to wit: February 13, 1859—the accrued interest in arrear, added to the principal, amounted to five thousand nine hundred and twenty dollars, when plaintiff and defendant Grover, by agreement in writing signed by them, stated and agreed that said sum was then due and payable, and that thereafter Grover would pay interest on that whole sum at one and one quarter per cent per month.   Grover continued to pay interest up to the month of July, 1860, when he conveyed the mortgaged premises to the defendant, Charles Morrill, with full and actual notice of the note and mortgage, and the extension of time of payment for two years from January 13, 1857, and of the amount due thereon, and the rate of interest which Grover agreed to pay.

6th. That from July 19, 1860, (the date of Grover's conveyance to Morrill) up to and including August 17, 1862, the defendants Charles Morrill and O. F. Morrill paid plaintiff the accruing interest on said note and mortgage at the rate above stated.

7th. Since July 19, 1860, defendant Charles Morrill has repeatedly promised to pay plaintiff the said sum of five thousand nine hundred and twenty dollars, due as aforesaid, but has neglected, etc.

8th. That O. F. Morrill and Chambers claim to have some interest, which is subsequent and subject to the plaintiff's mortgage.

9th. The prayer of the complaint is for a judgment against defendant William A. Grover, for five thousand nine hundred and twenty dollars, accruing interest, and five per cent counsel fees and costs, for a sale of the mortgaged premises, and foreclosure against the defendants, etc.; " but plaintiff does not ask and hereby waives all claim to a personal judgment against either of the defendants for any deficiency after apply-

ing all the proceeds of the sale of said premises to the satis-faction of said judgment," etc.

A default was entered against the defendant Grover, for want of answer.

All the defendants answer except Grover. The answers are separate.

For the purpose of passing upon the merits of this appeal, it is unnecessary to consider any of the answers except that of the defendant Chambers, who is now, confessedly, the owner of the land, disincumbered of the mortgage or subject to it.

There are six special defenses asserted in the answer of Chambers. Counsel of the parties respectively have discussed the case as related to all of these defenses; still it is apparent, from the briefs, that they are of one mind as to the point upon which the case must eventually turn—and we may add that, in that matter, our views do not differ from theirs.

Chambers, for the purpose of defeating the avoidance of the Statute of Limitations set up in the complaint, alleges:

1. That W. A. Grover, the mortgagor, on the 20th day of August, 1856, conveyed the mortgaged lands to Lester K. Grover, of ——, in the State of Connecticut, which deed was duly recorded on the following day.

2. That on the 29th day of December, 1859, Lester K. Grover and wife reconveyed the lands to his grantor, W. A. Grover, and the deed was duly recorded December 29, 1859.

3. That W. A. Grover thereafter, on the 19th of July, 1860, conveyed the lands to Charles Morrill. Deed recorded July 20th, same year, and contained a covenant of general warranty.

4. Charles Morrill conveyed to O. F. Morrill, February 10, 1862, by deed duly recorded the 18th of the same month.

5. O. F. Morrill conveyed to Chambers, August 26, 1862.

The question is, whether the above facts defeat the effect of the written acknowledgments by W. A. Grover, set up in the complaint by way of avoidance of the Statute of Limitations.

I. Disembarrassed of names, places and dates, the question may be stated thus:

If a mortgagor, before the maturity of the mortgage note,

conveys the mortgaged lands to a third person, and while the note is yet underdue gives an acknowledgment in writing to the holder that the note is a subsisting contract against him, and he thereafter accepts a reconveyance of the lands before time has run on the note as extended, and thereafter, but while the note as extended is yet underdue, conveys the land to a stranger —are the lands in the hands of this last grantee affected by the written acknowledgment of the mortgagor before named?

In *Lord* v. *Morris*, 18 Cal. 484, the Court held that " a mortgagor, after disposing of the mortgaged premises by deed of bargain and sale, loses all control over them. His personal liability thereby becomes separated from his ownership of the land, and he can by no subsequent act create or revive the charge upon the premises. He is as to the premises henceforth a mere stranger. And if, instead of selling the premises, he execute a second mortgage upon them, he is equally without power to destroy or impair the efficacy of the lien thus created by a subsequent renewal of the first mortgage note."

To the correctness of this decision we fully accede. It is founded upon the principle that the power of incumbering property, and of extending the life of existing incumbrances for a longer period of time than that to which they were limited in the first instance, as well as the power of disposing of property in any and all possible modes, is vested in the person to whom the property belongs. The right of property and the right to dispose of it as the proprietor may choose, are indissoluble.

As we conceive, however, there is one fact disclosed in the record which takes the case at bar out of the operation of *Lord* v. *Morris,* by withdrawing it from the operation of the principle upon which the judgment in that case was based.

It is true that the mortgagor, W. A. Grover, when he conveyed the land to L. K. Grover, on the 20th of August, 1856, became " a stranger " to the title, and as between himself and his grantee, Grover had no more power to extend the mortgage in time, than he had to increase the rate of interest, enlarge the principal sum due, or make a new mortgage out-

right. Time was as much of the essence of the mortgage contract as any other of its provisions, and the mortgagor could deal with none of them, to the prejudice of his grantee, so long as the *jus disponendi* remained with the latter.

On the 13th of January, 1857, and while the mortgage note was underdue, the mortgagor renewed it, and thereafter, on the 13th of February, 1859, he renewed it again. On the 29th of December of that year, before the Statute of Limitations had even run upon the note as originally framed, L. K. Grover reconveyed to the mortgagor in full property.

On these facts we consider that the mortgagor, the moment the title revested in him, held the land subject not merely to the note and mortgage as originally written, but as security for four years ensuing the date of the last acknowledgment; and that Chambers, claiming under him by subsequent conveyance, stands in his shoes, holding the land subject to the mortgage as extended.

If it be asked, " Upon what principle ?" the answer is, upon the same principle that precludes a mortgagor by conveyance in fee, who has no title at the time when the mortgage is executed, from holding an after acquired title, except as subservient to the mortgage. (Wood's Digest, p. 103, Sec. 33 ; *Clark* v. *Baker*, 14 Cal. 612.)

Again, the result follows from a just application of the maxim, that the accessory follows its principal.

The mortgage creates no estate in the land ; it is a mere security for the debt, and is like it in its legal nature. If the debt is assigned, the mortgage follows it by operation of law. If the mortgage note is renewed, the mortgage is renewed by intendment, and on the instant the note is barred by the Statute of Limitations, the mortgage is barred, even though but a day may have transpired since its execution.

When Grover made his final renewal of the note, February, 1859, if the title to the land had been in him, the mortgage would have been renewed without direct expression, by force of the maxim referred to. The operation of the rule was, however, for the time being, intercepted by the action of

another rule protecting Grover's grantee in the beneficial enjoyment of his estate. But when that temporary hindrance had been removed by the reconveyance to Grover, the mortgage, under the maxim named, at once assimilated itself to the note as renewed and extended.

This result cannot be considered an inequitable one. The rights of third persons were no longer concerned after the *mortgagor* had recovered the title, and we are at a loss to conceive upon what principle it can be held that, as between the original parties to the note and mortgage, the mortgage failed to match itself to the note in the new dimensions imparted to it by the prior written acknowledgment.

It is a matter of no moment that Chambers, when he took his conveyance of the land in 1862, had no knowledge that the note and mortgage had been extended. Lent was not delinquent in any known common law or statute duty or requirement. He was not bound to serve personal notice of the acknowledgment of February, 1859, upon any one, nor to publish the fact in the gazettes; and if he had caused the acknowledgment to be recorded in the Recorder's office it would have been followed by no legal consequences. Chambers, on the other hand, knew, at least, when he bought and paid his money, that the mortgage had not been discharged of record. He further knew, as matter of law, that under the Statute of Limitations a renewal of the note was a possible event. He might, and as a prudent man he ought, before concluding his purchase, to have sought out Lent and inquired of him as to whether the note had been renewed in fact. If on such application Lent had told him that there had been no renewal, and if, thereupon, Chambers, on the faith of the statement, had closed the trade and paid his money for the land, Lent would have been estopped from setting up the mortgage against the man whom his own false suggestions had misled. Not having pursued that course, however, Chambers must be understood to have bought and taken his conveyance subject to all hazards.

II. As to the covenant contained in the deed of Grover to

Morrill, that deed being a link in Chambers' deraignment from Grover.

The note, the mortgage and the renewal of February 13, 1859, all of them antedate the deed. Lent was not a party to the deed, and therefore was not a party to the covenant, nor has he become privy to it since, by any species of succession.

The judgment is affirmed.