[No. 6,334.—In Bank.]

# GEORGE A. SHERMAN v. JOHN McCARTHY ET AL.

DESCRIPTION — COMPLAINT — EJECTMENT.—In a complaint in ejectment, the starting point was described as 208 chains 20 links east of the corner to townships 1 and 2 north, ranges 4 and 5 west, Mount Diablo meridian. On the trial, a witness testified that he was a surveyor, and made a map of the land, and that the starting point mentioned in the complaint was definite, and there could be only one such point. *Held,* that the starting point was sufficiently described.

PATENT — MEXICAN GRANT — ADMINISTRATOR.—A patent which recites that the patentee is the administrator of F., the deceased claimant of the lands under a Mexican grant, vests the legal title in the patentee, although the patent purports to grant the land to him in his individual capacity.

ID.—ID.— MORTGAGE — DESCRIPTION—NOTICE.—A patentee in such case was himself one of the heirs of F., the claimant; before the issuance of the patent he made a mortgage, and described the mortgaged premises as "all my estate, right, title, and interest in the San Pablo Rancho (which was the land patented to him), meaning to convey all the right, title, interest, claim, and demands, and inheritance as heir of F. and his wife G." *Held,* that the mortgage only operated on the interest which the mortgagor derived by said inheritance; and that the recitals in the patent and the language of the mortgage were sufficient notice to the mortgagee of the trust in favor of the other heirs of the claimant.

MORTGAGE—SUBSEQUENTLY ACQUIRED TITLE.— A mortgage purporting to convey in fee all the estate, right, title, and interest of the mortgagor in a parcel of land operates upon an interest and title subsequently acquired by the mortgagor.

APPEAL from a judgment, and order denying a new trial, in the Fifteenth District Court, County of Contra Costa. DWINELLE, J.

*Mills & Jones,* and *McClure, Dwinelle & Plaisance,* for Appellant Magraff.

The patent, on its face, is void, being petitioned for by and for heirs of Francisco Maria Castro, and not for Joaquin Y.

Castro. The judgment of board of land commissioners and District Court confirms the same *to them.* (See Act of Congress of 3d of March, 1851, § 13, " To settle private land claims in California.") But if the Court should be of the opinion that the same is not void, then the patent shows by its recital that Joaquin Y. Castro held the title to the San Pablo Ranch as trustee, and as such trustee could not convey the same. (§§ 870, 871, Civ. Code; *United States* v. *Castro*, 1 Hoffm. L. Cas. 105; Treaty of Guadalupe Hidalgo, § 55 Hittell Laws.)

The mortgage and sale by Castro was only of the right, title, and interest which he (Castro) had at the date of the mortgage, and did not include a subsequent-acquired title by him. (*Gee* v. *Moore*, 14 Cal. 473, 474; *Kimball* v. *Semple*, 25 id. 452, 453; *Blanchard* v. *Brooks*, 12 Pick. 47; *Comstock* v. *Smith*, 13 id. 116; *Miller* v. *Ewiny*, 6 Cush. 34; *Duchess of Kingston Case*, 2 Smith Lead. Cas. 424, and notes; *Morrison* v. *Wilson*, 30 Cal. 344; *Cadiz* v. *Majors*, 33 id. 289; *McDonald* v. *Edwards*, 44 id. 330; *McGarrahan* v. *New Idra M. Co.* 49 id. 335.)

The doctrine of relation, or the "fiction of law," which authorizes a court to antedate so as to render operative a grant which would be otherwise without effect, is only to be applied to promote the ends of justice, and for the security of those who stand in privity with the party named in the grant. (*Newhall* v. *Sanger*, 2 Otto, 766; *Gibson* v. *Chouteau*, 13 Wall. 92.)

*Eli P. Chase*, for Appellant May.

The complaint is unintelligible, and the defect was especially pointed out by the demurrer. No person can tell where the starting point is in the survey and description set forth in the complaint.

For a starting point in the description there is a choice of nine different township corners, and a range of twelve miles north and south, and the same distance east and west; and starting at either, he is within the description contained in the complaint, and neither would embrace the same land contained in a survey from either of the other corners.

The question naturally arises, At which of the four corners of

township 1, range 4, or which of the four in township 1, range 5, is the starting point? And the same question arises in reference to township 2, ranges 4 and 5.

It is insisted that the plaintiff has failed to incorporate a description in his complaint that will apprise the defendant, the Court, or the officer designated to execute the judgment, where the land is situated (§ 455, Code Civ. Proc.), and the complaint is ambiguous, unintelligible, and uncertain for that reason, and for the same reason it fails to state facts sufficient to constitute a cause of action.

The question is not whether we can start at one of these corners, and, following the description, find the land in controversy, but whether we can start at either of the corners and not find it. A pleading is to be construed most strongly against the pleader. (*Snow* v. *Halstead,* 1 Cal. 361; *Chipman* v. *Emeric,* 5 id. 50; *Dickinson* v. *Maguire,* 9 id. 50; *Moore* v. *Reese,* 30 id. 572.)

This rule applies where the pleader stands upon his pleading, and maintains its sufficiency in law in the presence of a demurrer or other hostile attack.

*B. S. Brooks,* for Respondent.

The legal title which passed by the confirmation and patent passed by the foreclosure sale and sheriff's deed to J. M. Tewksbury, plaintiff's grantee, as was decided by the Supreme Court in *Littlefield* v. *Nichol,* 42 Cal. 372.

As the patent vests the legal title absolutely in Joaquin Y. Castro, his deed of his entire interest, legal and equitable, transfers it. It is true that a court of equity might, if circumstances warranted it in a proper case with the patentee or his assignee, and all the *cestuis qui trust,* and others claiming an interest before it, *by its decree, convert the patentee or his grantee into a trustee in invitem.* But that cannot be done in an action of ejectment in favor of one claiming a mere fraction ($\frac{1}{359}$) of the whole. A court of equity could not entertain 359 suits to declare or establish a trust. Every one of the *cestuis qui trust* would have a right to be heard. There is no allegation here of any trust or of any facts upon which the Court could create one. The case of *Griffin* v. *Blandear,* 17 Cal. 70, was a bill

in equity, all the parties were before the Court, *and the trust was expressly declared in the deed.* The rule in regard to such trusts is declared in § 870 of the Civil Code.

The interest which a sheriff might convey under a general execution is very different from that which passes under a foreclosure sale. A foreclosure sale relates back to the mortgage, and converts it into a deed of conveyance.

MORRISON, C. J.:

This is an action of ejectment to recover a portion of what is called the "San Pablo Rancho," and the appeal is taken from the late District Court of Contra Costa County. There are numerous parties defendant, only two of whom, Peter Magraff and Mary E. May, have appealed, the former from the judgment and order denying a motion for a new trial, and the latter simply from the order denying the motion for a new trial. Numerous errors have been assigned to the proceedings in the District Court, which we will proceed to examine and dispose of.

1. The first objection that we will notice is that the complaint is fatally defective, on the ground that it contains no definite description of the land sued for, as it does not give the starting point. The only evidence on the subject is that of one Taylor, who was called as a witness on behalf of the plaintiff, and testified as follows: "I am a surveyor. [Here insert map.] I made that survey and made that map, and I know the land there shown. The different parties, as shown in the diagram at the margin of the map to have been in possession of the different tracts, were in possession of those tracts at the time I made the survey. The starting point mentioned in the description is certain and definite, and there can be but one such point." We think the complaint sufficient.

2. The next point made on the appeal relates to the legal operation and effect of the patent under which plaintiff claims title. The patent, among other matters, contains the following recitals: " Whereas, it appears from a duly authenticated transcript filed in the General Land Office of the United States, that pursuant to the provisions of the Act of Congress approved the 3rd day of March, 1851, entitled 'An Act to ascertain and settle the private land claims in the State of California,' Joaquin

Ysidro Castro, administrator of the estate of Francisco Maria Castro, deceased, as claimant, filed his petition on the 9th day of October, 1852, with the commissioners, to ascertain and settle the private land claims in the State of California, sitting as a board in the city of Los Angeles, in which petition he claimed the confirmation of title to a tract of land known by the name of 'San Pablo,' situated in the county of Contra Costa, and State aforesaid, said claim being founded on two Mexican grants to the heirs of Francisco Maria Castro, deceased.     *     *     *     And whereas, the board of land commissioners aforesaid, on the 17th day of April, 1855, rendered a decree of confirmation in favor of the claimant, which decree or decision having been taken by appeal to the District Court of the United States for the Northern District of California, the said District Court, in the case entitled ' *The United States* v. *Joaquin Ysidro Castro,*' rendered its decision, as follows, to wit: ' It is by the Court hereby ordered, adjudged, and decreed, that the said decision be and the same is hereby affirmed, and it is likewise further ordered, adjudged, and decreed, that the claim of the said appellee is a good and valid claim, and the same is hereby confirmed to the extent of four square leagues.     *     *     *

" ' Now know ye, that the United States of America, in consideration of the premises, and pursuant to the provisions of the Act of Congress aforesaid of the 3rd of March, 1851, and the legislation supplemental thereto, have given and granted, and by these presents do give and grant, unto the said Joaquin Y. Castro, and to his heirs, the tract of land embraced and described in the foregoing survey; but with the stipulation that in virtue of the 15th section of the said act, neither the confirmation of this said claim nor this patent shall affect the interests of third persons.

" ' To have and to hold the said tract of land, with the appurtenances, unto the said Joaquin Y. Castro, and to his heirs and assigns forever, with the stipulation aforesaid.' "

It is claimed on behalf of the appellant that the above patent is void, but no authority is cited in support of such a view, and we are unable to see any good reason for such a conclusion.

The proceedings before the board of land commissioners show that Joaquin Y. Castro presented his petition before that board

as administrator, and the patent grants the land to him, not in his representative, but in his personal, capacity; but this does not affect the validity of the instrument. The most that can be contended for is that the patent should have issued to Castro as administrator, and that therefore he holds the lands granted as trustee for the heirs of Francisco Maria Castro; but even if the patent had issued to him as such administrator, it would have vested in Joaquin Y. Castro the legal estate, with power of disposition, as has been held by this Court.

In the case of *Bonds* v. *Hickman*, 29 Cal. 465, the Court says: " We cannot hold the patent void because it was issued to the administrator of the deceased assignee of the warrant, for it is not forbidden by law to be so issued in such cases. It is not shown upon the face of the patent that it was issued for land to which the deceased had the right of pre-emption; and if such was in truth the case, though not recited in the patent, it is not liable to be attacked collaterally on that ground." And in the same case, when again before the Court (32 Cal. 204), the learned Judge delivering the opinion of the Court, says: " The defendant objects that it does not appear that the deed from James Smith to the plaintiff was made by him as the administrator of Robert Smith, deceased. The patent was to ' James Smith, administrator of Robert Smith, deceased.' The title, which passed by reason of the patent and the proceedings on which it was founded, vested in James Smith, the patentee named. Whether he held it in trust for others we are not informed by the case before us, and we are not aware that it could in any event be a proper subject of inquiry in this action. We are of opinion that the Court erred in excluding the deed from James Smith to the plaintiff, and for that reason the judgment should be reversed and a new trial granted."

The plaintiff in this action deraigns title through Joaquin Y. Castro; and the legal title was vested in him at the time this action was brought. (*Littlefield* v. *Nichols*, 42 Cal. 372.)

The validity, operation, and effect of this patent were under consideration, and were passed upon by the Court in the case of *O'Connell* v. *Dougherty* (32 Cal. 458), and it was there held that the patent vested the legal estate in Joaquin Y. Castro, under whom plaintiff claims title in this action.

3. Two or three other points are made on this appeal, which we will briefly dispose of.

The identity of "Perre" and "Perez" is sufficiently established, and it appears that the two names represented but one and the same person.

The deed from Nicholas Hunsaker was executed by him as sheriff, and although somewhat informal, is substantially good.

4. There is sufficient evidence in the transcript to prove a delivery of the deed from Tewskbury to Sherman, the plaintiff in this action.

5. It was claimed on behalf of the plaintiff, that the mortgage from Joaquin Y. Castro and wife to Perre, under which the plaintiff's title was derived, was intended to convey, and did convey, the entire Rancho de San Pablo, and that was the construction placed upon the mortgage by the District Court. The language of the instrument is, "That the said parties of the first part, for and in consideration of the sum of six thousand dollars to them in hand paid by the said party of the second part, do grant, bargain, sell, and confirm unto said party of the second part, and to his heirs and assigns, all the estate, right, title, interest, claim, and demand whatever, as well in law as in equity, of the said parties of the first part, of, in, and to all that certain tract or parcel of land lying, being, and situate in the county of Contra Costa aforesaid, and more particularly known and described as the Rancho de San Pablo, bordering upon the bay of San Francisco and San Pablo, and containing about five leagues, *meaning to convey all of the right, title, interest, claim, and demands, and inheritance as heirs of* the late Francisco M. Castro and his wife Gabriella Berryessa, deceased."

It appears from the transcript, that Francisco M. Castro departed this life on or about the 5th day of November, 1831, and left surviving him his widow Gabriella, and eleven children, of whom the mortgagor was one, and by his last will and testament he devised one-half of the Rancho de San Pablo to his wife, and the remaining half to be divided equally among his children.

It also appears that Joaquin Y. Castro, on the 9th day of October, 1852, filed his petition before the board of land commis-

sioners, in which he stated that the title of which he asked confirmation was founded upon two Mexican grants to the heirs of Francisco Maria Castro, and in said petition he represented himself to be the administrator of the estate of his deceased father, Francisco Maria Castro. It is true that the patent ran to him and his heirs, and therefore vested in him, Joaquin, the legal title; but it is nevertheless apparent upon the face of the record, that a trust was vested in him in favor of the heirs of Francisco.

Of all these facts the mortgagee must be deemed to have had notice, actual or implied; for certainly the facts were such as to have put any reasonable person upon inquiry, which inquiry, if properly pursued, would have led to a knowledge of the existing facts. It is very apparent that Joaquin Y. Castro never did claim any greater interest in the Rancho de San Pablo than the undivided interest which he derived from his father and mother; and we are of the opinion that it was that interest and that alone which he intended to mortgage to Perre. The language is: "Meaning to convey all of the right, title, interest, claim, and demands, and inheritance as heirs of the late Francisco M. Castro and his wife Gabriella Berryessa." Whatever interest was vested in him and his wife, as the heirs of the deceased father and mother, was conveyed by the mortgage, and it was never intended or contemplated that the entire rancho should be affected by the mortgage lien. The language of the mortgage and all the surrounding circumstances lead us to this conclusion. The foreclosure and sale, therefore, vested in the purchaser an undivided interest in the rancho, and not the entire property.

6. Appellants, in their briefs, insist that, as Joaquin had no title at the time the mortgage was executed, the title subsequently acquired by him did not inure to the benefit of his mortgagee. In support of this proposition authorities are cited to the effect that a conveyance without covenants of warranty, or, in other words, a deed of release or quitclaim, simply passes the title which the grantor has at the time. But that principle has no application to this case, for two reasons: first, the mortgage purports to convey an estate in fee-simple; and secondly, the rule invoked does not apply to *mortgages*. These questions were fully and ably considered by Chief Justice Field, in the

case of *Clark* v. *Baker* 14 Cal. 612, and we accept the language and reasoning of that case as presenting a correct exposition of the law. (See also *Lent* v. *Morrill*, 25 Cal. 500; *The Vallejo Land Association* v. *Vlera*, 48 id. 579.)

The appellants Mary E. May and Peter Magraff were grantees of undivided interests in the rancho, deraigning title to such interests from the same common source, and are therefore tenants in common with the plaintiff. The judgment against them for their interests was, therefore, erroneous.

Judgment and order reversed as to Peter Magraff; and as to Mary E. May, the order denying a new trial is reversed.

MYRICK, J., SHARPSTEIN, J., THORNTON, J., ROSS, J., concurred.