# DECISIONS

## OF THE

# SUPREME COURT OF FLORIDA.

## JANUARY TERM, A. D. 1888.

M. C. JORDAN, APPELLANT, VS. HENRY D. SAYRE ET AL., APPELLEES.

1. Grounds of demurrer not noticed in brief of counsel for appellant, who demurred, may be regarded by the appellate court as abandoned.

2. A suit in equity to foreclose a mortgage under seal and apply the proceeds of the mortgaged property to the payment of the debt secured by the mortgage, is an action founded on an instrument of writing under seal within the meaning of the statute of limitation of 1872, and twenty years is the limitation prescribed by such statute to such a suit.

3. The fact that a personal action on the promissory note evidencing the debt, may be barred by the lapse of the shorter period prescribed by the statute as a bar to such action, does not bar a foreclosure suit. Browne et als. vs. Browne, 17 Fla., 607, reviewed and approved.

4. When a mortgage is in law as well as in equity simply a lien on the land it covers, and it gives no right of possession of the land, the mortgagor's possession during the period allowed by the statute for instituting a suit of foreclosure, is not adverse to the rights of the mortgagee, but is subordinate thereto; and the same is true as to the possession of the mortgagor's grantee, although such grantee hold under covenants warranting the title.

2

5. A purchase by the owner of a mortgage at a sale under a foreclosure proceeding to which the person owning at the institution of the suit the legal title of the land mortgaged was not a party, does not prevent or bar a subsequent foreclosure suit to which the person who may own the legal title at the institution of the latter suit, is made a party.

6. A release or estoppel as to a part of the mortgage indebtedness, and as to the lien of the mortgage on a part of the land mortgaged, does not affect the residue of the debt nor the lien of the mortgage as to the remainder of the land.

7. Though an assignment of simply the mortgage or of the mortgagee's interest in the land without the mortgage debt, may be a nullity, yet where the language of the instrument of assignment is sufficient to carry both the debt and the mortgage it will be sustained as an assignment of both, although not in the usual form; and particularly so where it is admitted upon the record by both the assignor and assignee, as complainants, that both the debt and mortgage were assigned.

8. H., the owner of a mortgage duly recorded, bid in the mortgaged land at a sale under a foreclosure suit instituted by him against the mortgagor, but to which the person owning the legal title was not a party. Afterwards H. conveyed by warranty deed the west fifty feet of the land to J. for the consideration of $1,200, and then transferred to M. H. by deed all his right, title and interest and all claims and demands whatsoever in law and equity to the balance or east thirty feet of the land. After this J. acquired the east thirty feet by deed from the person who owned the legal title at the institution of the above foreclosure suit. Subsequently H. and M. H. and the latter's husband filed a bill against the mortgagor and J. for a foreclosure and sale of the east thirty feet to satisfy the mortgage indebtedness over and above the $1,200. The bill admits an assignment of the mortgage and the indebtedness secured by it, to H.: *Held*, That the latter suit of foreclosure may be maintained, and that the demurrer of J. to the bill should be overruled.

Appeal from the Circuit Court for Duval county.

[Mr. Justice VanValkenburgh, on account of bad health, did not participate in the decision of any of the cases decided at the January Term, 1888.—REPORTER.]

The appellees, Henry D. Sayre, Philip Halle and his wife, Minnie, filed a bill in chancery against Loudwick Warrock and his wife and the appellant, Jordan, on the 24th day of August, 1886.

The allegations of the bill are as follows:

That Warrock, on March 27, 1873, being indebted to one Benedict, executed to him a promissory note of $2,000, payable, with interest, one year after said date at 20 per cent. per annum, payable semi-annually, and to secure the payment of the same, he and Mrs. Warrock executed to Benedict a mortgage on the east part of lot No. 6, in square 71, in the city of Jacksonville, the said piece of land so mortgaged being eighty feet wide east and west, and one hundred and five feet long north and south. The mortgage contains an express covenant to pay the indebtedness; othwise it is in the usual form. The mortgage was duly recorded on June 18, 1874, in the records of Duval county, and on the same day Benedict assigned the note and mortgage to Sayre. A certified copy of the mortgage, and of Benedict's assignment, recorded June 18, 1874, are annexed to the bill as a part thereof. Warrock and wife, on March 20th, 1876, executed a " paper purporting to be a warranty deed of conveyance " of said lot of land to A. Joseph Myers, and on August 16, 1884, Myers released his interest in said lot to Jordan, " who thereby claims to have become the owner in fee by means of said deed."

That on September 25, 1879, Sayre filed a bill in Duval Circuit Court to foreclose the mortgage, and that to this bill Warrock and his wife *were the only defendants.* A decree was rendered in this suit December 1st, 1879, adjudging that $4,655.53 was due on the prommissory note, and that the land be sold by a master, and that the amount due be paid out of the proceeds of the sale; and on January 5th,

1880, the master made a sale of the property to Sayre at the sum of $1,000, and a master's deed, in the usual form, purporting to convey the property to Sayre. These proceedings, complainants state they are advised, did not convey the property to Sayre or to have affected the legal title of Myers to the property ; and said proceedings were of no effect to satisfy the note and mortgage, and that the same remain in force and effect as if no such proceedings had been had.

That Sayre, on September 25, 1883, conveyed to Jordan by deed with warranty of title, the west fifty feet of said eighty feet of said lot so mortgaged, and that the consideration paid by Jordan was $1,200, as expressed in said deed, " whereby the said Sayre conveyed to said Jordan whatever title he had in said fifty feet and discharged the same from the lien of said mortgage, and thereby reduced the amount due on said note and mortgage to the extent of the sum so paid by said Jordan, which said deed is in the possession of Jordan."

That Sayre, on June 10, 1884, for the consideration of $500, transferred by deed of conveyance to said Minnie Halle all his right, title and interest, and all claims and demands whatever in law and in equity in and to the east thirty feet of said eighty feet of said lot. That the only interest Sayre had in said thirty feet was the said mortgage lien ; and that the said deed from Sayre to Minnie Halle was, and must be deemed and decreed to be, and assignment of Sayre of the said note and mortgage and the money due thereon (after deducting the said amount paid by Jordan to Sayre) and the lien thereof as to said east thirty feet.

That neither Warrock, nor any other person for him, has paid to the past or present holder of said note and mortgage the money mentioned therein, but that the same remains due and unpaid except the sum paid by Jordan to Sayre.

The prayer of the bill is, for answer and " that complainants may have the benefit of the proceedings and decree under the foreclosure bill and proceedings referred to, wherein said Sayre was complainant, and said Warrock and wife were defendants, to which this bill is in the nature of a supplemental bill, as to the validity of said mortgage lien and the sum then due upon said note and mortgage; that the said premises, to-wit: the said east thirty feet of said mortgaged lot may be directed to be sold to satisfy the amount due thereon, to be ascertained according to the rules and practice of this court; and that the said amount due may be paid to complainants for the use of Minnie Halle, or that such other and further relief may be had as the nature of the case may require," &c.

There is a decree *pro confesso* against Warrock and wife. Jordan demurred to the bill, and a decree having been entered overruling the demurrer, he has appealed. The grounds of the demurrer are stated in the opinion.

*M. C. Jordan* and *A. W. Cockrell & Son* for Appellant.

No counsel appeared for Appellees.

MR. JUSTICE RANEY delivered the opinion of the court:

There are thirteen grounds of objection to the bill of complaint set up in the appellant's demurrer. We shall confine our observations to the points made and the argument advanced in his solicitor's brief, and treat any ground of demurrer not covered by them as abandoned. Southern Express Company vs. Van Meter, 17 Fla., 783. It is contended in the first place that the complainants' right of action is barred, and this contention is based upon the idea that in this State the same period of time that bars an action of ejectment is a bar to a suit to foreclose a mortgage.

In Browne vs. Browne, *et als.*, 17 Fla., 607, decided A. D. 1880, it was held that a suit in equity to sell land mortgaged and apply the proceeds to the payment of a promissory note secured by the mortgage is an action upon a contract founded upon an instrument of writing under seal, within the meaning of section 10 of our limitation act of 1872, and that such suit could be maintained in equity though an action at law upon the note was barred by the provision of the statute fixing the time within which such an action on the note might be brought. The statute of limitations covers not only legal, but also equitable remedies. The bar of a civil action on a sealed instrument is twenty years, and of one on a promissory note five years. Between nine and ten years had elapsed between the maturity of the note and the filing of the bill by the payee of the note against the surviving mortgagors and heir and representative of a deceased mortgagor.

It is unnecessary to review the authorities discussed in the opinion and which support its conclusion, but we may remark of Lord vs. Morris, 18 Cal., 482, where it is held that the same period of limitation bars both an action on the note and one on the mortgage, that there is nothing in it inconsistent with the view that, had the statute of California prescribed a different (instead of the same) limitation to an action on a sealed instrument from that prescribed for an action on a written instrument not under seal, the decision of the court would have been to the effect that the limitation as to the sealed instrument controlled a suit to foreclose a mortgage. The view of the court was that the limitation of actions for recovery of real estate founded upon the title could not be adopted by analogy for the reason that a mortgage of itself gave, under the system in that State, no right of possession, either real or technical, and that the limitation prescribed for "a contract, obliga-

tion or liability founded upon an instrument in writing" applied to a mortgage, because the statute makes "no distinction in the period of limitation between a simple contract and a contract under seal," and the mortgage was "as much within the general designation of 'a contract obligation or liability founded upon an instrument of writing' as * * * the note itself." Though there are expressions in the opinion which, when considered alone, .might be taken to indicate that the suit on the mortgage was barred for the reason that an action on the note was, (a doctrine which, however plausible it may seem, has not met with very much favor,) yet such is not the real doctrine of the opinion. In Low vs. Allen, 26 Cal., 141, 145, it is remarked : "The mortgage contract of Tharp and Ramsdell is distinct from the note it was given to secure, and is manifestly one of the written contracts on which the statute provides that no action shall be brought except within five years after the cause of action has accrued."

The conclusion reached in Browne vs. Browne is sustained by the decisions of the courts of those States where the character of the statutes as to the limitation of remedies and as to mortgages is similar to those obtaining here.

We understand counsel for appellant not to dissent from the result reached in Browne vs. Browne, if it is considered in connection with the facts of that case, it being a foreclosure suit with parties, as explained above, and there being in the mortgage, according to inference of counsel, though we do not so understand from the report of the case, a distinct covenant to pay the debt, and bringing the case within the twenty-year provision for instruments of writing under seal. As there is in the mortgage before us, as is substantially alleged in the bill of complaint, a covenant by the parties of the first part, "for themselves, their

heirs, executors and administrators * * to pay unto the
said party of the second part, his heirs, executors or as-
signs the said sum of money, principal and interest and all
costs, charges and expenses, including attorneys' fees which
the party of the second part may incur or be put to in col-
lecting the same by foreclosure," we might, if there had
been, as in Browne vs. Browne, no transfer of the mort-
gage of the land, dispose of the case upon the theory of
the effect of such covenant.

In jurisdictions where the statute of limitations has ap-
plied only to legal remedies, equity has adopted in suits of
foreclosure of mortgages the limitation prescribed for ac-
tions of ejectment or other actions founded upon title for
the recovery of real estate instead of the limitation con-
trolling a personal action against the mortgagor or debtor
for the mere debt. Originally at common law a mortgage
conveyed the legal estate to the mortgagee, and upon the
mortgagor's default in paying the debt at the time speci-
fied for such payment, the estate became vested absolutely
in the mortgagee. Equity regarding the mortgage as secu-
rity for a debt rather than a sale of the land, came to the
relief of the mortgagor and permitted him to redeem by
paying the debt, and as equity gave this relief, the right to
it was called the equity of redemption. It also gave the
mortgagee a remedy by foreclosure, through which a limit
to the right of redemption might be fixed by decree, and if
the redemption was not made as decreed, the mortgagor's
equity was extinguished and the estate was absolute in the
mortgagee. This was called a strict foreclosure. This
kind of foreclosure fell into disuse and the practice of de-
creeing a sale of the mortgaged property at public outcry
to the highest bidder has long obtained. Goodenow vs.
Ewer, 16 Cal., 461. In dealing with the question of limi-
tation to the remedy of foreclosure and sale, equity re-

garded the instrument as conveying, technically at least, the legal title, and the remedy of foreclosure as one upon such title and to divest the mortgagor of possession of the premises, and on this principle applied by analogy the limitation controlling the legal remedies for the recovery of possession. Wilkins *et al.* vs. Flowers, 37 Miss., 579 ; Nevitt vs. Bacon, 32 Miss., 212.

In Florida a mortgage is not only in equity merely a lien, but under our statute it is nothing more than this *at law.* Berlack vs. Halle, 22 Fla., 236. It is not a conveyance of the legal title or estate, but only a lien upon it. It gives the mortgagee no right of possession. The theory of any such right, either actual or technical, existing in the mortgagee by virtue of the mortgage, is entirely antagonistic to both the spirit and letter of our statute. No decree giving the mortgagee, as such, possession, can be rendered in favor of the mortgagee simply upon the mortgage and the debt it secures. It is only as purchaser under a decree of foreclosure and sale, and not as mere mortgagee, that the assistance of the court can be obtained for giving him possession. This being the case we cannot see any basis for an analogy to legal actions for recovery of real property.

The fact that twenty years are allowed to enforce a mortgage lien, whereas only seven are given to recover possession on the legal title against an adverse holding, is not an anomaly in the statute. It allows twenty years for the enforcement of a common law judgment or simple money decree, which are, by our statutes, made also a lien on the interest of the defendant in any real estate. There is no more reason why the lien of a judgment should thus be preserved for twenty years than that of a mortgage. The record of either makes it, in law, notice to all the world, and whoever acquires the title of the mortgagor

takes subject to such lien; in each case the evidence of the lien is a record, and the purpose of the lien is to secure the payment of money.

The first transaction of Jordan in connection with any of the eighty feet of land covered by the mortgage is his purchase of the west fifty feet from Sayre. This purchase was made September 25, 1883, about four years and eight months after Sayre obtained from the master in chancery the deed pretending to convey to him the whole eighty feet, which deed was futile as a conveyance of the land, as the legal title to it was in Myers, who was not a party to the foreclosure proceedings instituted September 25, 1879, and under which the master sold and conveyed. Berlack vs. Halle, 22 Fla., 236. The conveyance from Sayre was by deed with warranty of title and for the consideration of twelve hundred dollars. Warrock, the mortgagor, conveyed by warranty deed to Myers, March 20th, 1876, and at this time the mortgage was on record and legal notice to Myers. On the 16th day of August, 1884, Myers, " by deed of quit-claim, released his interest in said lot to Jordan," who, says the bill, " thereby claims to have become the owner in fee by means of said deed." Of course Sayre's deed to Jordan, whatever may be its effect for other purposes, does not affect the east thirty feet of the lot against which the foreclosure is now sought. The only interest in, or connection with, these thirty feet that Jordan has, so far as the pleadings advise us, is that which he has derived from Myers, and Myers' interest was the ownership of the legal title subject to the mortgage, and of this mortgage Jordan, or any one else dealing with Myers, was charged with notice.

Had Warrock continued to hold the land, the statutory bar of the mortgage would not have run until the latter part of March, 1894. Neither Myers, who purchased from

Warrock, nor any grantee of Myers, has any better position as against the mortgage. Although the period of limitation began to run against the mortgage on the maturity of the note in March, 1874, and, as we must presume in the absence of any showing to the contrary, continued to run; yet Myers' possession was not adverse to the mortgage in the sense of either changing his relation to it, or lessening the period prescribed as a bar to its enforcement, or otherwise impairing the rights of the holder of it.

The case of Benson vs. Stewart, 30 Miss., 49, is cited by counsel for appellant in support of his contention that the possession of Myers was adverse to the mortgage. In that State the period barring an entry at law is adopted by analogy as barring a foreclosure of the mortgage. In Nevitt vs. Bacon, 32 Miss., 227, where it is held that the statute of limitations commences to run from the time the mortgagee's right to file his bill accrues, it is said in the opinion of the court, delivered by Justice Handy, who delivered the opinion in Benson vs. Stewart, "and here it may be proper to remark that what is said in that case (Benson vs. Stewart) with respect to adverse possession, had reference to the party who purchased from the mortgagor, in whose behalf the statute was not a bar when the bill was filed; and that party not being protected by an adverse possession under his purchase from the mortgagor for a sufficient length of time to be protected by the bar, he would occupy the position in which the mortgagor stood, in whose favor the period of time necessary to constitute the bar had not run when the bill was filed against him."

The fact that Warrock conveyed by warranty deed does not change the rule, Heyer vs. Pruyn, 7 Paige, 465; Thayer vs. Cramer, 1 McCord's Chan., 395; Lent vs. Morrell, 25 Cal., 492; Drayton vs. Marshall, Rice's Reports, 373; Wright vs. Eaves, Rich. Eq., 81.

In Heyer vs. Pruyn *et al.*, VanDyke purchased in Sept. 1812, the mortgaged land under a junior judgment against the mortgagor, but subject to the prior incumbrances and under an arrangement for taking them up, to which the mortgagee, Heyer, was not a party. Afterwards VanDyke sold in 1813 to Shaver, giving him a deed with covenants. Shaver had no notice of Heyer's mortgage, except the constuctive notice arising from the record of it. VanDyke knew of the mortgage. Shaver purchased in 1813, and the mortgage had become due in December, 1810, more than twenty years before the bill was filed. "If," says. Chancellor Walworth, who had previously remarked that VanDyke, by his covenants in the deed to Shaver, and running with the land to subsequent purchasers, was bound to pay off the mortgage, so as to protect the premises from its lien, "he (VanDyke) had continued the owner of the premises until the commencement of this suit in January, 1832, it is evident he could not have set up lapse of time as a bar to complainant's suit, even if there had been no subsequent payment on the bond and mortgage, nor any recognitions of the same as a subsisting debt. The defendants, therefore, claiming through the conveyance from VanDyke to Shaver, sit in the seat of the grantor in that conveyance, and are bound by his recognition of the mortgage as a subsisting incumbrance upon the premises within twenty years."

In Lent vs. Morrell, the mortgagor, Grover, conveyed by deed of general warranty to Charles Morrell, and the latter to O. F. Morrell, who conveyed to Chambers. Chambers, when he purchased, did not know that the mortgagor had, before selling to O. F. Morrell, extended the time for payment of the note. A default was entered as to the mortgagor, who had failed to answer, but the other three defendants answered. It was held by the court that if the maker of a note secures the same by mortgage on land, and while still the

owner of the mortgaged property, extends the time of the payment of the note, or if he divests himself of the title to the lands and then extends the time of payment of the note, and afterwards acquire title, the purchaser from the mortgagor of the lands mortgaged, takes the same subject to the lien of the mortgage until the note is barred by the statute of limitations, although at the time of his purchase he did not know that the time of the payment of the note had been extended. As to the covenant in Grover's deed to Morrell, a link in Chambers' deraignment from Grover, the court says : " The note, the mortgage and the renewal of February 13th, 1859, all antedate the deed. Lent was not a party to the deed, and, therefore, was not a party to the covenant, nor has he become privy to it since by any species of succession."

It is clear that as against the legal title, neither Benedict, Sayre nor Halle has ever had any other status than that of mortgagee, and no other limitation than that applicable to a mortgage, which is twenty years, applies to them. Of this period only a little over twelve years had passed at the filing of the present bill. Neither of them has at any time been in a position to maintain an action for the recovery of possession. If a suit for foreclosure can be called such an action, then the bar to it, viewed as such, is twenty years, for the right to such suit is founded upon the mortgage. Having, however, no other status than that of a mortgagee, the laches imputable to an owner of the legal title from the lapse of seven years without suit can not be attached to them. Had Sayre acquired the legal title by his purchase in chancery of December 5th, 1880, from the master, it would have terminated his relation of mortgagee and a different case would be presented, but he did not do so, and the result is that we have only to deal with him as mortgagee and against one holding under the title of the

mortgagor and subordinate to the mortgage. No other case is shown by the record, and upon the case shown, it is clear that no other limitation than that applicable to mortgages obtain, and this has not run. Medley vs. Elliott, 62 Ill., 532 ; Rockwell vs. Servant, 63 Ill., 424 ; Brown vs. Devine, 61 Ill., 262; Pratt vs. Pratt, 96 U. S., 704; Coulter vs. Phillips, 20 Penn. St., 154.

II. It is contended that if the complainant is entitled to any relief, it can not be had in the method pursued here, and in support of this proposition the cases of Goodman vs. Ewer, 16 Cal., 461 ; Boggs vs. Fowler & Hargrave, *Ib.*, 560 ; Abadie vs. Lobero, 36 Cal., 391, are cited.

In Goodenow vs. Ewer the facts were as follows : Downer and Morris were the owners, each of an undivided half of a town lot, Downer mortgaged his undivided half to plaintiffs in May, 1857, to secure $2,000, and the mortgage was duly recorded. In June following Downer and Morris sold and conveyed to the defendant, Ewer, an undivided one-third of the entire property. The effect of this was that Downer, Morris and Ewer, each held an undivided one-third interest in the property, and one-half Ewer's interest (the one-sixth he had purchased from Downer) being subject to Downer's mortgage to plaintiffs. In December following the plaintiffs instituted a suit to foreclose their mortgage, making no one but Downer a defendant, and in January following obtained a decree for a sale of all the interest that Downer possessed in the land *at the date of the mortgage.* In February, 1858, defendant, Ewer, purchased the remaining interest of Morris, and in March the remaining interest of Downer, in the premises. At a sale made under the above decree in June, 1858, the plaintiffs became the purchasers, bidding the full amount due on their judgment, and in proper time received a deed of con-

veyance from the officer making the sale. The plaintiffs, after obtaining their deed of conveyance, filed a bill of partition and account against Ewer, who had been in possession receiving rents from after the sale to plaintiffs under the decree.

It was held that the decree and sale were of no effect as to Ewer's title to the one-sixth interest which he had purchased from Downer before the institution of the foreclosure suit; that a mortgagor, or if he has disposed of his title, his grantee, is a necessary party to a suit of foreclosure and sale; that though the plaintiffs did not understand that it was necessary that Ewer should have been a party, but thought they were acquiring the entire half interest covered by Downer's mortgage, and the officer making the sale had stated, in accordance with the decree, that such half interest was offered for sale, they acquired only one undivided third of the whole land, and that the effect of the purchase thereof, for the full amount of the decree, satisfied the decree, and that the one-sixth interest sold by Downer to Ewer was thereby discharged from the lien of the mortgage; and that the mistake as to the extent of the interest in the land acquired at the sale, was one purely of law, and not such as equity would relieve against.

In Boggs vs. Fowler and Hargrave, there was a sale under a decree of foreclosure and sale, to which suit and decree the grantee of the mortgagor was not a party. The purchaser at such sale brought an action at law against the mortgagee to recover the money paid by him on his bid. He was aware when he made this bid that the mortgagor had sold the premises before the institution of the foreclosure suit; and there was no showing of any fraud in the sale. It was decided that although the doctrine of *caveat emptor* did not apply, the action would not lie; that though the purchaser made a mistake as to the effect of the decree,

(which was held to be void from the absence of the grantee or legal owner of the property as a party,) it was one from which no relief could be obtained *at law.*

In Abadie vs. Lobero, it was held that a purchaser at a Sheriff's sale does not by such purchase acquire any interest in the judgment on which the execution or order of sale issued, or the debt or mortgage upon which the judgment was rendered, nor does a redemptioner, as such, or an assignee of the certificate of sale, acquire any interest in such judgment, debt or mortgage; and that neither of such parties, upon his own *ex parte* motion made in his own name, is entitled to have the judgment vacated and himself substituted as plaintiff in order that he may file a supplemental complaint to bring in other parties.

In the first of the above three cases it was said that upon proper application in the original foreclosure suit, the court would undoubtedly have released the plaintiffs from the purchase, set the sale aside, opened the decree, and allowed them to file a supplemental complaint bringing in Ewer and others interested, as parties; and in second case it was stated that the plaintiff must resort to the original suit and that upon his application there the court might order the sale to be set aside, the satisfaction of the decree to be cancelled, and *authorize a supplemental bill for a resale of the premises to be filed and conducted in the name of the complainants in that suit for the plaintiffs' benefit,* and direct that the mortgagor's grantee and others interested be brought in as a party; and in the third case, the remark italicised is spoken of as a *dictum,* and being a proposition for which no authority had either been cited or fallen under the court's observation.

The case before us is unlike either of these cases. Unlike Goodenow vs. Ewer, there was nothing acquired by Sayre by his purchase and deed under the decree against War-

rock and wife to operate as a satisfaction of his decree, even to the amount of his bid. The complainants here are not mere purchasers, with no other standing, like the plaintiff in Boggs vs. Fowler and Hargrave.

In State Bank of Wisconsin vs. Abbott, 20 Wis., 599, it was held that when in the foreclosure of a mortgage the owner of the equity of redemption has, through mistake, not been made a party, the mortgagee who has purchased at a sale under the decree for the whole amount of the mortgage debt and costs may maintain a second action to foreclose the equity of such owner and for a new sale to make the principal and interest due on the mortgage, but not for costs of the former suit. It was said in the opinion by Dixon, C.-J., that even if the effect of the sale for the full amount of the decree was to extinguish all personal liability of the mortgagor, who was the defendant in the former suit, that this was all the effect that could be given the proceedings, and that in all other respects the plaintiff, who was the assignee of the mortgage and the note it secured, stood as if no proceedings whatever had been had. See also section 1679 of Jones on Mortgages, where the same rule is observed.

III. No lien, for any amount capable of adjudication under the allegations of the bill, it is urged, can be enforced exclusively against the east thirty feet. The reason given for this contention is that the mortgage contract did not put it there. The case of Mickler vs. Townsend, 18 N. Y., 578, is relied upon. This case, considering the facts of the one at bar, seems to be authority in favor of the complainants being estopped to enforce the mortgage against the west fifty feet held by Jordan under deeds from both Myers and Sayre, but there is nothing in it considering the facts before us, to support the view with which it is urged. If it

be that complainants are estopped to enforce the mortgage against the west fifty feet, or to claim the consideration therefor, $1,200, as against Jordan, there is no reason why the balance of the debt should not be enforced against the other part of the land. A release, whether made either directly or indirectly, of a part of the debt secured and of the lien of a mortgage as to part of the property mortgaged, does not affect the residue of the' debt or the lien of the mortgage as to the residue of the property.

Wilson vs. Troup, 2 Cowen, 195, cited as authority for the doctrine that a conveyance by the mortgagee of a part of the estate will not carry with it a corresponding part of the power to enforce the lien, and that there can be no foreclosure as to the east thirty feet involved here, is a case in which the owner of a mortgage having a power of sale, made conveyances of part of the land to several different persons, and afterwards sold all the land at public sale under the power, after due advertisement of the same, and became the purchaser thereof. It was held that the private sales did not affect the mortgagor's right of redemption, nor the owner's power to foreclose as against the mortgagor under the power of sale, but that as to the parcels sold previously, the foreclosure by sale pursuant to the power, and the purchase thereunder, operated for the benefit of the previous vendees, and that as to them the owner of the mortgage could never claim anything for himself under his foreclosure and purchase. Had the mortgagor, Wilson, previously conveyed or released his interest to the vendees of the owner of the mortgage, it is clear that there would have been in him no equity of redemption as to the parcels so conveyed, and the owner of the mortgage would have been estopped to enforce the mortgage as against the land so held by them by deeds from both himself and the mort-

gagor, in other words, from the owners of the legal and the equitable title.

There is nothing in this case to the effect that a mortgage cannot be released either directly or indirectly as to part of the debt and part of the land, and enforced as to the balance.

It is true that an assignment simply of the mortgage or of the mortgagee's interest in the land, without the debt, is held to be a nullity. In the case at bar, however, we have before us as complainants, both the assignor and the assignee, and upon the record, the assignment of both the balance of the debt and the lien as to the east thirty feet is admitted ; and the terms of the deed as set forth in the bill are sufficient to carry the mortgage interest as to the land involved in this suit, and should be held to do so. Johnson vs. Leonards, 68 Maine, 237 ; Hunt vs. Hunt, 14 Pick., 374; 15 Pick., 83; Ruggles vs. Barton, 13 Gray, 506.

There is no error in the decree appealed from, and it will be affirmed.